965 F.2d 922
 Prod.Liab.Rep. (CCH) P 13,194
Paul EATON and Monfort, Inc., Plaintiffs-Appellants,
v.
JARVIS PRODUCTS CORPORATION, a Connecticut corporation,
Defendant-Appellee.
Colorado Trial Lawyers Association, Amicus Curiae.
 No. 91-1089.
 United States Court of Appeals,
Tenth Circuit.
 May 29, 1992.
 
 Thomas J. Herd (David L. Quicksall with him on the briefs) of Cross, Gaddis, Kin & Quicksall, P.C., Denver, Colo., for plaintiff-appellant, Eaton.
 Jeffrey J. Cowman of Fowler, Schimberg and Cowman, P.C., Denver, Colo., for plaintiff-appellant, Monfort.
 Michael G. Cooksey of Cooksey & Cooksey, Denver, Colo., for defendant-appellee, Jarvis.
 Robert A. Millman, Colorado Trial Lawyers Ass'n, Colorado Springs, Colo., on the amicus curiae brief.
 Before ANDERSON, TACHA, Circuit Judges, and COOK,* Senior District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Appellant Paul Eaton filed this diversity action in the United States District Court for the District of Colorado, alleging that defendant Jarvis Products Corporation ("Jarvis") was strictly liable and liable under a theory of negligence for injuries Eaton suffered while sharpening a piece of equipment manufactured by Jarvis. Eaton's injuries occurred during the course of his employment with Monfort of Colorado, Inc. ("Monfort"). Monfort, as a self-insured employer, asserted a subrogation claim against Jarvis to recover the workers' compensation benefits paid to Eaton. Monfort's and Eaton's claims against Jarvis were then consolidated.
 
 
 2
 Applying Colorado's seven year statute of repose, Colo.Rev.Stat. § 13-80-107, which bars certain claims involving "new manufacturing equipment," the district court granted Jarvis' motion for summary judgment, holding that Eaton's action was barred because it was brought more than seven years after the particular piece of equipment which injured Eaton was first used by Monfort. Eaton and Monfort appeal, arguing that the district court erred in its interpretation and application of the statute of repose, and that the statute violates plaintiffs' federal and state rights of equal protection and due process. The Colorado Trial Lawyers Association has filed an Amicus Curiae brief in support of plaintiffs' claims. Plaintiffs have made two motions which are pending--one to certify various questions to the Colorado Supreme Court and one to supplement the record on appeal. We deny both motions and affirm the judgment of the district court.
 
 BACKGROUND
 
 3
 At the time he suffered his injuries, Eaton worked as a maintenance man in Monfort's slaughterhouse in Greeley, Colorado, where live cattle were butchered and the carcasses cut up prior to preparation and packaging for sale as beef products.[1] Eaton's injuries were caused by a hockcutter manufactured by Jarvis and sold and delivered to Monfort by Jarvis. A hockcutter is a hydraulic meat cutting device with blades, which is used to sever the legs from cattle. Eaton was injured while sharpening the blades on one of several hockcutters used in the Monfort slaughterhouse. As he was setting the hockcutter down on the ground and positioning it for sharpening, the blades closed on his left hand, severing four fingers. He asserted in his affidavit that neither of his hands was on the trigger button, which is intended to activate the hockcutter, at the time of the accident. The parties stipulated that Eaton's injury was caused by the inadvertent operation of the hockcutter through the accidental depression of the unguarded trigger as it lay against the ground.
 
 
 4
 The parties agree that Monfort purchased three or four hockcutters from Jarvis in the late 1960s and/or early 1970s. Jarvis manufactured both the hockcutters and the trigger unit component of the hockcutters that is the focus of this lawsuit. No one has been able to identify the precise hockcutter which caused Eaton's injuries because it did not have a serial number.[2] Monfort's slaughter division plant manager, Donald Anderson, provided an affidavit stating that he knew personally that Monfort had purchased "at least two and probably three trigger unit components and placed them on Jarvis hockcutters in the time period from 1982 to December 22, 1987." Anderson Affidavit at p 5, Appendix Vol. I at 149.
 
 
 5
 No one disputes that the hockcutter Jarvis originally sold to Monfort did not have an external guard on the trigger or an internal interlock device to prevent inadvertent operation of the machine. And Jarvis does not dispute that it did not provide users of its hockcutters, like Monfort, with written notification of the availability of a retro-fitted trigger guard, which it developed in 1974 or 1975, until some point after Eaton's injury occurred.[3]
 
 
 6
 Eaton's strict liability and negligence action focuses on the trigger unit, alleging (1) that it was defective in its original design and that Jarvis failed to redesign it properly; (2) that Jarvis subsequently developed a trigger guard but that the guard was insufficient and, in any event, Jarvis failed to give written notice to Monfort of the availability of the guard; and (3) that Jarvis had failed to provide warnings cautioning users to disconnect power before sharpening the blades. Plaintiffs specifically do not claim that the entire hockcutter or the blades which severed Eaton's fingers were defective. They only assert a defect in the trigger unit.
 
 
 7
 The district court held: (1) the statute of repose was applicable to plaintiffs' claims, inasmuch as the hockcutter constituted "new manufacturing equipment" under the statute; (2) the statute barred the claims, because the hockcutters were purchased and first put to their intended use more than seven years before Eaton's injury; (3) plaintiffs' action does not fall under an exception to the statute of repose, because the alleged defect was not a "hidden defect" nor did Jarvis intentionally withhold or fraudulently conceal safety information concerning the hockcutter; and (4) the statute of repose is constitutional. It therefore denied plaintiffs' motion for partial summary judgment, granted defendant's motion for summary judgment, and dismissed the complaint.
 
 DISCUSSION
 
 8
 Plaintiffs appeal from the grant of summary judgment to Jarvis. "We review the grant or denial of summary judgment de novo. We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (citation omitted); Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriately granted "when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment. Deepwater Investments, Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). "In reviewing the grant of summary judgment in a suit based on diversity jurisdiction, we apply the law of the forum." Skidmore, Owings & Merrill v. Canada Life Assurance Co., 907 F.2d 1026, 1027 (10th Cir.1990) (citation omitted). Thus, Colorado provides the substantive law to be applied. We "review de novo a district court's determination of state law." Salve Regina College v. Russell, 499 U.S. ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 
 9
 Jarvis was granted summary judgment on the ground that the statute of repose barred plaintiffs' claims. " 'The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment....' " Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir.1991) (quoting Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir.1987)). Plaintiffs argue that the district court erred in concluding that Jarvis had met its burden of showing that the statute of repose barred plaintiffs' claims. We disagree.
 
 
 10
 Colorado's statute of repose provides as follows:
 
 
 11
 Limitation of actions against manufacturers, sellers, or lessors of new manufacturing equipment. (1)(a) Notwithstanding any statutory provision to the contrary, all actions for or on account of personal injury, death, or property damage brought against a person or entity on account of the design, assembly, fabrication, production, or construction of new manufacturing equipment, or any component part thereof, or involving the sale or lease of such equipment shall be brought within the time provided in section 13-80-102 and not thereafter.
 
 
 12
 (b) Except as provided in paragraph (c) of this subsection (1), no such action shall be brought on a claim arising more than seven years after such equipment was first used for its intended purpose by someone not engaged in the business of manufacturing, selling, or leasing such equipment, except when the claim arises from injury due to hidden defects or prolonged exposure to hazardous material.
 
 
 13
 Colo.Rev.Stat. § 13-80-107. The statute defines "manufacturing equipment" as "equipment used in the operation or process of producing a new product, article, substance, or commodity for the purposes of commercial sale and different from and having a distinctive name, character, or use from the raw or prepared materials used in the operation or process." Colo.Rev.Stat. § 13-80-107(2).
 
 I.
 
 14
 We first address, as did the district court, whether the Jarvis hockcutter at issue is "manufacturing equipment" within the meaning of the statute. Although a definition of "manufacturing equipment" is provided, it does not conclusively resolve whether a hockcutter used in a cattle slaughterhouse is "manufacturing equipment." Both parties assert that common sense supports their position--plaintiffs arguing that it is obvious that slaughterhouse equipment merely processes live cattle into beef products without altering their essential character, so that it cannot be "manufacturing equipment," and Jarvis arguing that there is a vast difference in law and in fact between live cattle and beef products, so that equipment used to accomplish the transformation is indeed "manufacturing equipment."
 
 
 15
 Plaintiffs argue that, to the extent the statute is ambiguous, it must be strictly construed in favor of plaintiffs. There are no Colorado cases discussing the meaning of "manufacturing equipment."[4] We must therefore predict how the Colorado Supreme Court would decide this issue. See Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782-83, 18 L.Ed.2d 886 (1967).
 
 
 16
 We hold that the Jarvis hockcutter which injured Eaton is "new manufacturing equipment" under the Colorado statute of repose. "In construing a statute, we must give effect to the ordinary meaning of its language. If the language is ambiguous or subject to more than one interpretation, we must construe the statute in light of its legislative intent and purpose." Anderson v. M.W. Kellogg Co., 766 P.2d 637, 642 (Colo.1988); see also Colo.Rev.Stat. § 2-4-203 (governing how to construe ambiguous statutes); Engelbrecht v. Hartford Accident & Indem. Co., 680 P.2d 231, 233 (Colo.1984). Colorado law also provides that statutes which are in derogation of the common law, as is a statute of repose, must be strictly construed. Ciancio v. Serafini, 40 Colo.App. 168, 574 P.2d 876, 877 (1977).
 
 
 17
 The district court assumed ambiguity, and then resorted to legislative history and to the legal differences between live animals and meat products to support its conclusion that the hockcutter in question was indeed "new manufacturing equipment."
 
 
 18
 For the purposes of analysis, we too assume that the ordinary meaning of the statute's language does not conclusively resolve whether a hockcutter is "new manufacturing equipment." We turn, therefore, to the legislative history. As the district court noted, the legislative history of the statute of repose indicates that the legislature wanted to provide manufacturers with a time certain after which they could no longer be sued for injuries caused by their equipment. See Anderson v. M.W. Kellogg Co., 766 P.2d 637, 642 (Colo.1988).[5] There was relatively little focussed discussion of what "new manufacturing equipment" meant. The history is replete with references to what kinds of equipment and products were not intended to be covered by the statute. The legislature was particularly concerned that a product such as asbestos, or certain drugs and chemicals, which have a long latency period before their harmful effects are evident, might somehow fall under the statute and claims against manufacturers of such products would be barred.
 
 
 19
 We agree with the district court that those types of products were "clearly not the focus of the statute." The statute's sponsor, Senator Hefley, made the following comments:
 
 
 20
 "[W]e're talking here about punch presses and drills and things of that nature.
 
 
 21
 . . . . .
 
 
 22
 "We're talking about punch presses and we're talking about brakes and we're talking about drills and things of that nature. We're not talking about asbestos.
 
 
 23
 . . . . .
 
 
 24
 "Won't have anything to do with automobiles; won't have anything to do with asbestos; won't have anything to do with Agent Orange; won't have anything to do with drugs. This bill specifically deals with manufacturing equipment."
 
 
 25
 . . . . .
 
 
 26
 "And believe me, in a manufacturing operation, they know very, very quickly whether that machine is going to work right or not. Doesn't have anything to do with automobiles."
 
 
 27
 Tape Recording of Senate Committee of the Whole, Senate Floor Proceedings, March 13, 1981, 53rd General Assembly. Another legislator expressed the view that the definition of "manufacturing equipment" is self-evident, and he further opined that washing machines and refrigerators would not be such equipment. Transcription of Recorded Discussion Senate Bill 64, House Committee on Judiciary, April 23, 1981. Yet another legislator stated, "when you're talking about manufacturing equipment, you're talking about producing something that's then going to be sold by the person who has produced it." Id.
 
 
 28
 We agree with the district court that the legislative history indicates that a hockcutter used in a slaughterhouse was indeed the type of equipment the legislature envisioned would be covered by the statute. It is analogous to a drill or punch press, and it is used to produce something that will be sold by the person producing it.
 
 
 29
 Plaintiffs argue that such an interpretation will turn every butcher into a manufacturer. We readily concede that it is difficult to draw a clear distinction between the slaughterhouse operation where live cattle are killed, eviscerated and halved (where Eaton's injury occurred), and retail butchering, where larger cuts of meat are further refined and packaged for sale to consumers. Nonetheless, we believe there is a distinction, and we believe the Colorado legislature intended to include within its definition of "manufacturing equipment" those pieces of equipment used in the large scale, coarse process of transforming live cattle to eviscerated carcass halves. We need not decide at what point the "manufacturing" process ends, or whether retail butchers would be considered "manufacturers" under the Colorado statute of repose. We need only decide whether slaughterhouse equipment constitutes "manufacturing equipment" and nothing in the legislative history suggests that the legislature intended to exclude such equipment while including equipment utilized in comparable plants and factories.
 
 II.
 
 30
 We next address whether the district court correctly held that plaintiffs' claims were barred because brought more than seven years after the hockcutters were first put to their intended use by Monfort. We affirm that conclusion, based on a straightforward reading of the statute.
 
 
 31
 Plaintiffs argue that the seven-year time period should commence when the allegedly defective component part--in this case, the trigger unit--was first used, arguing that the statute and Colorado law clearly contemplate actions based on defective component parts. The statute does indeed contemplate actions on account of defective component parts of equipment, and the trigger unit challenged in this case is clearly a component part. However, the statute further specifically provides that "no such action shall be brought on a claim arising more than seven years after such equipment was first used for its intended purpose ..." Colo.Rev.Stat. § 13-80-107(1)(b). The legislature could easily have said, "after such equipment or component part thereof was first used for its intended purpose." It did not do so, however, and we must follow the plain and clear wording of the statute.
 
 
 32
 Accordingly, since there is no dispute that the hockcutters were first put to their intended use longer than seven years before Eaton's injury, plaintiffs' claims are barred unless they can establish that an exception to the statute of repose applies. We turn, therefore, to the only exception plaintiffs argue on appeal--that the alleged defect in the trigger unit constituted a "hidden defect."
 
 III.
 
 33
 The statute's seven-year bar does not apply if "the claim arises from injury due to hidden defects...." Colo.Rev.Stat. § 13-80-107(1)(b). Plaintiffs argue that there is a genuine factual dispute as to whether the alleged defect in the trigger unit constituted a hidden defect under Colorado law, and therefore summary judgment was inappropriately granted to Jarvis.[6] We disagree.
 
 
 34
 "For a product to contain a 'hidden defect' within the meaning of section 13-80-127.6, 'it must have a defect that creates an unreasonably dangerous condition which is not readily apparent.' " Anderson, 766 P.2d at 643 (quoting Wayda v. Comet Int'l Corp., 738 P.2d 391, 393 (Colo.Ct.App.1987)). This is an objective test--"whether the defect was not readily apparent or discoverable by a reasonably prudent user." Id. Thus, Eaton's protestation that he was unaware of the dangers of the trigger unit is irrelevant. The Colorado Supreme Court specifically rejected in Anderson a "subjective test based on the user's knowledge of the existence of a defect." Id.
 
 
 35
 Plaintiffs claim that the danger of inadvertent activation of the unguarded trigger was a hidden defect. The Colorado Supreme Court in Anderson stated, "[a]lthough failure to guard may constitute a defect, failure to guard an open and obvious danger does not constitute a hidden defect within the meaning of this statute." 766 P.2d at 644. Applying Colorado's objective test, we hold that the unguarded trigger did not constitute a hidden defect. A reasonably prudent user would have appreciated that the unguarded trigger could be bumped, thereby activating the hockcutter, which was still connected to its power source.[7] Cf. Urban v. Beloit Corp., 711 P.2d 685, 687 (Colo.1985) (grant of summary judgment to manufacturer reversed where facts insufficient to determine whether injuries caused by hidden defect). We of course decline plaintiffs' invitation to critique or depart from the Colorado Supreme Court's selection of an objective test for hidden defects in its Anderson opinion. In applying the substantive law of Colorado, we are bound by the pronouncements of that state's highest court.
 
 IV.
 
 36
 Finally, we turn to the question of whether the statute of repose violates either plaintiffs' federal or state constitutional rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution and Art. II, Section 25 of the Colorado Constitution. We also consider whether it violates plaintiffs' rights to open access to the courts under Art. II, Section 6 of the Colorado Constitution or their right to be free from special legislation under Art. V, Section 15 of the Colorado Constitution. As the district court noted, the Colorado Supreme Court in Anderson held that the statute of repose did not violate the Fourteenth Amendment. It did not address the constitutionality of the statute under the Colorado Constitution. We consider each possibility.
 
 
 37
 We must presume that a state statute is constitutional. See McDonald v. Board of Election Comm'rs, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408-09, 22 L.Ed.2d 739 (1969); see also Colo.Rev.Stat. § 2-4-201; Anderson v. M.W. Kellogg Co., 766 P.2d 637 (Colo.1988); Parrish v. Lamm, 758 P.2d 1356, 1364 (Colo.1988). Under either the federal or the state equal protection analysis, the level of scrutiny afforded the statute depends on the nature of the interest involved. Thus, "strict scrutiny" is appropriate where a "suspect class" or a "fundamental right" is involved. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 29, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973); Austin v. Litvak, 682 P.2d 41, 49 (Colo.1984). The state must demonstrate a compelling governmental interest where a fundamental right is affected or a suspect classification created.
 
 
 38
 Where no such fundamental right or suspect classification is involved, the rational basis test applies, such that different groups of people may be treated differently without violating equal protection principles if the classification has a rational basis in fact and bears a rational relationship to legitimate governmental objectives. Schweiker v. Wilson, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080-81, 67 L.Ed.2d 186 (1981); McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1104-05, 6 L.Ed.2d 393 (1961); Anderson v. M.W. Kellogg Co., 766 P.2d at 645; Austin v. Litvak, 682 P.2d 41, 49 (Colo.1984).[8]
 
 
 39
 The Colorado Supreme Court in Anderson held that "[t]he statute of repose for new manufacturing equipment in section 13-80-127.6 involves neither a suspect class nor a fundamental right" for purposes of federal equal protection analysis. 766 P.2d at 645. We agree. Other courts have so held, including our own. See, e.g., Alexander v. Beech Aircraft Corp., 952 F.2d 1215, 1225 n. 12 (10th Cir.1991); Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1136 (6th Cir.1986); Hartford Fire Ins. v. Lawrence, Dykes, Goodenberger, Bower & Clancy, 740 F.2d 1362, 1367-73 (6th Cir.1984). The Colorado Supreme Court has indicated the same result would be reached under state equal protection principles. See Austin v. Litvak, 682 P.2d at 49-50 ("The Supreme Court has held that the right to recover damages in tort is not a fundamental right."). Thus, the statutory classifications challenged need only be rationally related to a legitimate governmental purpose. We hold that they are.
 
 
 40
 The legislative history indicates that the statute was intended to apply to manufacturers of equipment which is used in a factory or plant setting, and used on a continuous or nearly continuous basis, so that any defects in the equipment would generally be apparent before the seven-year time period had expired. It was to give such manufacturers a "time certain after which they would no longer be liable for injuries caused by the equipment they manufactured.... so the manufacturers' liability exposure and insurance costs could be delineated more clearly and there would be no more open-ended liability." Anderson, 766 P.2d at 642-43. Plaintiffs argue there is no rational basis for distinguishing between such manufacturers and manufacturers of any other type of equipment or product which could potentially cause injury. We disagree.
 
 
 41
 "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)); see also United States v. Lee, 957 F.2d 778, 782 (10th Cir.1992) ("The Supreme Court has made it clear that statutory classifications will be set aside as violative of equal protection only if no grounds can be conceived to justify them as rationally related to a legitimate state interest."). The classification attacked in this statute was designed to protect certain injured plaintiffs, while protecting certain manufacturers from open-ended and uncertain liability for equipment the legislature determined would typically reveal any defects or problems relatively quickly. We cannot say that the legislative determination to limit section 13-80-107 to manufacturers of such equipment is irrational. "[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. It is enough that the State's action be rationally based and free from invidious discrimination." Dandridge, 397 U.S. at 486-87, 90 S.Ct. at 1162 (citation omitted). We perceive no violation of plaintiffs' equal protection rights under either the federal or state constitutions. Alexander v. Beech Aircraft Corp., 952 F.2d 1215, 1224-25 (10th Cir.1991) (noting and citing numerous cases upholding the constitutionality of statutes of repose and holding that Indiana statute of repose did not violate equal protection or due process rights under state and federal constitutions).[9]
 
 
 42
 Plaintiffs also argue that the statute violates their right to open access to the courts under Art. II, Section 6 of the Colorado Constitution and their right to be free from special legislation under Art. V, Section 15 of that Constitution. We hold that it does not. "It is well established that a statute is presumed constitutional and the party challenging it has the burden to establish its unconstitutionality beyond a reasonable doubt." Anderson, 766 P.2d at 645; see also State Farm Mut. Auto. Ins. Co. v. Broadnax, 827 P.2d 531, 540 (Colo.1992). In upholding the constitutionality of this very statute, the Colorado Supreme Court in Anderson observed that, "[u]nlike a statute of limitations, a statute of repose may bar a claim before the injury occurs." 766 P.2d at 640. Thus, a denial of access to the courts is not, standing alone, a violation of the Colorado Constitution. See State Farm Mut. Auto. Ins. Co. v. Broadnax, 827 P.2d at 535-36 ("This court has stated that 'generally, a burden on a party's right of access to the courts will be upheld so long as it is reasonable.' " (quoting Firelock, Inc. v. District Court, 776 P.2d 1090, 1096 (Colo.1989))).
 
 
 43
 Similarly, we reject plaintiffs' argument that the statute of repose amounts to prohibited "special legislation." Plaintiffs do concede that the legislature may classify and treat differently certain groups "so long as there are distinguishing peculiarities which make reasonable the exception of the designated class from the general law." Appellants' Brief at 41. We have already held that the statute passes the equal protection rational basis test, because the distinctions drawn by the statute are rational and bear a reasonable relationship to legitimate governmental objectives. We likewise hold that it does amount to "special legislation" under the Colorado Constitution, because its classifications are reasonable. See Norwest Bank Nebraska, N.A. v. W.R. Grace & Co., 960 F.2d 754, 758-761 (8th Cir.1992) (Nebraska statute of repose not "special legislation.").
 
 CONCLUSION
 
 44
 For the foregoing reasons, we AFFIRM the district court judgment granting Jarvis' motion for summary judgment and dismissing plaintiffs' action.
 
 
 
 *
 The Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 There is a distinction between the "slaughterhouse" where the cattle are butchered and the carcasses eviscerated, cut in half and cooled, and the "fabrication" division where the cuts are refined and packaged. Eaton's injury occurred in the slaughterhouse
 
 
 [2]
 The parties stipulated that, although a new hockcutter should contain a serial number on one of its parts, the foreseeable and ongoing replacement of parts in the hockcutter resulted in the original part which contained the serial number being replaced by a part without a serial number
 
 
 [3]
 Vincent R. Volpe, currently President of Jarvis, testified by deposition that a Jarvis employee "reminded Monfort several times to put trigger guards on ... [o]ver a period of '75 through '87 or '88." Deposition of Vincent Volpe, Appendix Vol. I at 218
 
 
 [4]
 There are a variety of cases from other jurisdictions involving the general question of whether manufacturing encompasses the operations of a slaughterhouse or meatpacking plant. Some raise the issue in the context of whether a slaughterhouse or meatpacking plant is a manufacturer for tax purposes. Our review of the cases leads us to the same observation as made by the Virginia Supreme Court:
 "In general the more comprehensive definitions recognize three essential elements involved in manufacturing: (1) original material referred to as raw material; (2) a process whereby the raw material is changed; and (3) a resulting product which, by reason of being subjected to the processing, is different from the original raw material. The conflict in the authorities results largely in the different viewpoints as to the degree of change necessary to satisfy the third requirement. It may be said, however, that mere manipulation or rearrangement of the raw materials is not sufficient; there must be a substantial, well-signalized transformation in form, quality and adaptability rendering the material more valuable for man's use than it was before."
 Prentice v. City of Richmond, 197 Va. 724, 90 S.E.2d 839, 843 (1956). Nonetheless, we agree with the district court that those cases are at most tangentially helpful, because the statute of repose in this case provides a definition of "manufacturing equipment," which must guide our decision more than cases from other jurisdictions defining manufacturing generally or manufacturing under other particular statutes. See Stone v. Sullivan, 154 Conn. 498, 227 A.2d 76 (1967).
 
 
 [5]
 There was considerable discussion that manufacturers were concerned that their insurance rates were too high, based upon uncertain and open-ended liability for their equipment and products
 
 
 [6]
 Before the district court plaintiffs argued that Jarvis intentionally withheld or wrongfully concealed safety information concerning the hockcutter, so that the statute of repose does not apply. See Colo.Rev.Stat. § 13-80-107(1)(c). The district court rejected that argument, and plaintiffs do not pursue it on appeal
 
 
 [7]
 The court in Anderson specifically rejected the argument that a failure to warn of a danger constitutes a hidden defect under the statute of repose. Anderson, 766 P.2d at 643-44
 
 
 [8]
 The Colorado Supreme Court in Austin v. Litvak, 682 P.2d at 50, stated as follows:
 Our recent cases have made clear that there are two separate and distinct prongs to the rational basis test. The first prong of the test has been formulated as requiring that "the classification is reasonable, not arbitrary," or that "the statutory classification has some rational basis in fact...." The second prong requires either that "the statutory classification ... bear[s] a rational relationship to legitimate state objectives," or that it be "reasonably related to a legitimate governmental interest." Regardless of the linguistic formulation of the test, we must conduct a "serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals."
 
 
 [682]
 P.2d at 50 (citations omitted). Plaintiffs argue that this provides a more exacting test than the rational basis test for federal equal protection purposes. Even assuming Colorado's constitutional equal protection analysis is somehow more stringent than the federal analysis, we believe that the statute of repose would not violate the Colorado Constitution
 
 
 [9]
 Plaintiffs' due process argument is somewhat vague and unfocussed. To the extent they argue that the extinction of their cause of action prior to its accrual violates due process, we reject that argument. As we observed in Alexander v. Beech Aircraft Corp., 952 F.2d 1215 (10th Cir.1991):
 "We are persuaded by the reasoning of the Seventh Circuit in Pitts [v. Unarco Indus., Inc., 712 F.2d 276 (7th Cir.), cert. denied, 464 U.S. 1003, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983) ] and we have similarly rejected challenges to legislative provision barring claims that have not vested. While the statutes are harsh, we cannot agree that they deny due process or equal protection or that they invalidly deprive one of access to the courts in light of policy reasons for the statutes such as avoiding the risks and cost of litigation to manufacturers after a lengthy passage of time."
 Id. at 1225 (citation omitted) (footnote omitted); see also Lourdes High Sch. v. Sheffield Brick & Tile Co., 870 F.2d 443, 445-46 (8th Cir.1984) (upholding statute of repose against due process challenge); Eddings v. Volkswagenwerk, A.G., 835 F.2d 1369, 1373-74 (11th Cir.) (same), cert. denied, 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 44 (1988); Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 555 (3rd Cir.1985) ("Other Courts have recently upheld statutes that in effect extinguish claims before they accrue.").
 Plaintiffs provide no more amplification of a distinct state due process claim, aside from their argument that their equal protection rights, as included within the guarantee of due process under the Colorado Constitution, have been violated and their argument related to access to the courts under the open courts provision of the Constitution. We discuss their equal protection and their open courts argument elsewhere.