Judith NEWSOME, Plaintiff,

v.

COUNTY OF SANTA FE, Santa Fe Sheriff's Department, and Benji Montano, Ron Madrid, Eugene Garcia, John Tapia, and William Martinez in their individual and official capacities, Defendants.

Civ. No. 95–543 BB/RLP.

United States District Court,
D. New Mexico.

March 20, 1996.

John C. Bienvenu, Tina S. Boradiansky, Santa Fe, NM, for plaintiff.

Elizabeth L. German, Brown & German, Albuquerque, NM, for defendants.

## MEMORANDUM OPINION

BLACK, District Judge.

This Opinion addresses two pending motions. The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that (1) Defendants' July 18, 1995 motion to dismiss Plaintiff's claims under Title VII against Defendants Montano, Madrid, Garcia, Tapia, and Martinez in their individual capacities (Doc. 8) should be GRANTED, and (2) Defendants' November 6, 1995 motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983 (Doc. 34) should be DENIED.

### I. Facts and Procedural History

Plaintiff makes the following allegations in her complaint:

Defendant the Santa Fe Sheriff's Department ("the Department") first hired Plaintiff Judith Newsome, a white female, as a Deputy Sheriff in 1986. From 1986 to 1989, Plaintiff received highly favorable evaluations of her job performance, and by 1989, had achieved the rank of Corporal. Plaintiff left the Department in 1989 to pursue graduate studies at New Mexico Highlands University.

The Department, through Defendant Sheriff Benji Montano, rehired Plaintiff in August 1990. At this time, Defendants began to discriminate against Plaintiff, and subject her to a hostile work environment, because of her sex. The Department assigned Plaintiff a disproportionate number of sex-related crimes for investigation, and Plaintiff's fellow officers made numerous sexual comments to Plaintiff, touched female staff inappropriately, and were generally disrespectful to Plaintiff because of her sex. Plaintiff's superior officers condoned this discrimination and hostile work environment.

In August 1991, Defendant Deputy Sheriff Captain Ron Madrid announced that five positions for Sergeant were available. Six Corporals, including Plaintiff, applied for these positions. The five applicants other than Plaintiff were Hispanic males. To determine which applicants would receive the promotions to Sergeant, the Department combined the applicants' scores from an oral multiple choice test with subjective scores on

the applicants' job performance, attendance, and personal appearance.

Plaintiff believes that prior to the oral examination, Defendant Deputy Sheriff Lieutenant John Tapia held study sessions at his home for all of the applicants except Plaintiff. Defendants Madrid, Tapia, and Deputy Sheriff Major Eugene Garcia, all Hispanic males, conducted the oral examination on September 4, 1991. The five Hispanic male applicants were subsequently promoted to Sergeant, and Plaintiff was not. The Department informed Plaintiff that she was not eligible for promotion, because her combined score was too low. In denying Plaintiff the promotion to Sergeant, Defendants discriminated against her on the basis of sex and race. Furthermore, Plaintiff believes that Defendants' failure to promote her was part of Defendants' regular practice of sex and race discrimination. From April 1990 to October 1991, Plaintiff believes that of thirty-one officers who received promotions, thirty were male, and twenty-six were Hispanic.

On October 25, 1991, Plaintiff filed an administrative complaint against Defendants with the New Mexico Department of Labor and the federal Equal Employment Opportunity Commission, in which she alleged sex and race discrimination. Plaintiff's superiors and fellow officers retaliated against Plaintiff for filing this complaint, by refusing to speak to her, making sexually inappropriate noises over the police radio, and placing harassing telephone calls to Plaintiff's home. In particular, Defendant William Martinez, one of the five Hispanic male applicants promoted to Sergeant in September 1991, used his new position as Plaintiff's superior officer to harass and retaliate against Plaintiff.

On November 7, 1991, Plaintiff was diagnosed with "adjustment disorder and dysthymia," caused by the harassment she experienced at work. Plaintiff's condition worsened, and her physician placed her on medical leave of absence from December 9, 1991 to January 6, 1992. When Plaintiff returned to work, Defendants' sex and race discrimination and retaliation continued. Defendants ignored Plaintiff's requests for reassignment to the Civil Division, reassigned her instead to the night shift of the Patrol Division, and deprived her of bonus pay. As a result of Defendants' actions, Plaintiff was hospitalized for suicidal tendencies and diagnosed with "major depression" on April 13, 1992. Plaintiff contracted pneumonia on May 12, 1992, and her physician again placed her on medical leave of absence, until May 26, 1992.

While Plaintiff was on medical leave of absence in May 1992, she had several conversations regarding her position with Paul O'Donoghue, the personnel director of Santa Fe County. Mr. O'Donoghue informed Plaintiff that the only alternative positions available to her were positions in which no possibility of advancement existed. These statements, combined with the numerous other incidents of sex and race discrimination Plaintiff had experienced, resulted in an intolerable working environment. On May 28, 1992, Plaintiff was forced to resign.

On August 25, 1992, the New Mexico Department of Labor issued a finding of probable cause to believe Plaintiff had suffered sex and race discrimination, and as of May 17, 1995, the Equal Employment Opportunity Commission was in the process of issuing Plaintiff a right-to-sue letter. On the latter date, Plaintiff filed a complaint in this Court, alleging that Defendants violated her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17 (1994), and the First and Fourteenth Amendments to the United States Constitution. In her complaint, Plaintiff seeks compensatory and punitive damages, back pay, front pay, benefits, reinstatement, pre- and post-judgment interest, and costs and attorneys' fees.

Defendants filed their second amended answer to Plaintiff's complaint on November 6, 1995, denying the substance of Plaintiff's allegations and asserting fifteen affirmative defenses. *Inter alia*, Defendants assert that (1) Plaintiff cannot state a claim under Title VII against Defendants Montano, Madrid, Garcia, Tapia, and Martinez in their individual capacities, and (2) to the extent Plaintiff's complaint sets forth claims under 42 U.S.C. § 1983 based on conduct occurring before May 17, 1992, the statute of limitations bars these claims. On July 18, 1995, Defendants

filed a motion to dismiss Plaintiff's claims under Title VII against Defendants Montano, Madrid, Garcia, Tapia, and Martinez in their individual capacities, and on November 6, 1995, Defendants filed a motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983 on the basis of the statute of limitations. These motions are now before the Court.

## II. Analysis

 The Court may not grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless "it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1496 (10th Cir.1995). The Court must "accept all well-pleaded allegations as true," *id.*, and "indulge all reasonable inferences in favor of the plaintiff[ ]." *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1228 (10th Cir.1987). The Court will consider Defendants' motions to dismiss in light of these standards.

### A. Defendants' July 18, 1995 Motion to Dismiss Title VII Claims Against Defendants Montano, Madrid, Garcia, Tapia, and Martinez in their Individual Capacities

 In their July 18, 1995 motion to dismiss, Defendants move the Court to dismiss Plaintiff's claims under Title VII against Defendants Montano, Madrid, Garcia, Tapia, and Martinez ("individual Defendants") in their individual capacities.[1] Defendants set forth two arguments in support of this motion. Defendants first assert that as a matter of law, Plaintiff cannot state a claim under Title VII against the individual Defendants in their individual capacities because Title VII does not impose liability on such persons. Second, Defendants argue that Plaintiff's claims against the individual Defendants must fail because Plaintiff did not name these Defendants in the charge of discrimination that she filed with the Equal Employment Opportunity Commission.

1. "[T]he individual defendant's liability [in] his official, strictly representative capacity, which is simply one method of bringing suit against the employer ..., is distinct from a[n individual]

Regarding Defendants' first argument, the operative provision of Title VII states that

> [i]t shall be an unlawful employment practice for *an employer* ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a) (emphasis added). The statute defines "an employer," in turn, as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such person.*" 42 U.S.C. § 2000e(b) (emphasis added).

The language of these two provisions could suggest that individuals who are "agents" of "employers" are, themselves, "employers" and thus are liable under Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995). Nevertheless, most federal appellate courts to have considered the issue have determined that individuals in their individual capacities, as "agents," are not liable under Title VII. *See id.*; *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995); *United States Equal Employment Opportunity Comm'n v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1995); *Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir.1995); *Grant v. Lone Star Co.*, 21 F.3d 649, 651–53 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Smith v. St. Bernards Regional Medical Ctr.*, 19 F.3d 1254, 1255 (8th Cir.1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied sub nom. Miller v. La Rosa,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). *See also Sheridan v. E.I. DuPont de Nemours & Co.*, 74 F.3d 1439, 1454 (3d Cir.1996) (finding no individual liability under Title VII), *vacated & reh'g en banc granted* (Feb.

capacity suit." *United States Equal Employment Opportunity Comm'n v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 n. 4 (7th Cir.1995).

28, 1996); *Lenhardt v. Basic Inst. of Technology*, 55 F.3d 377, 380–81 (8th Cir.1995) (holding that Missouri statute analogous to Title VII did not impose liability on individuals, relying on federal caselaw decided under Title VII and ADEA). *But compare Ball v. Renner*, 54 F.3d 664, 665–68 (10th Cir.1995) (holding that it is "an open question" in Tenth Circuit whether individuals can be liable under Title VII); *with Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993) ("Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate.").

"The starting point in analyzing [the issue of statutory construction] must be the language of the statute." *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 820 (10th Cir.1995); *Tomka*, 66 F.3d at 1313. However, "in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Tomka*, 66 F.3d at 1313 (quotation omitted); *Resolution Trust Corp. v. Love*, 36 F.3d 972, 976 (10th Cir.1994). Also, while the plain meaning of a statute is normally controlling, the Court must, exceptionally, look beyond the plain meaning "in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *In re M & L Business Mach. Co.*, 75 F.3d 586, 590 (10th Cir.1996) (quotation omitted); *Tomka*, 66 F.3d at 1313. In *Tomka*, the Second Circuit concluded, in harmony with the great majority of federal courts of appeals, that literal application of the "agent" provision of Title VII, to impose liability on individuals, would "not comport with Congress' clearly expressed intent in enacting that statute." *Id.* at 1314.

The courts have determined that Congress did not intend to impose Title VII liability on individuals for several reasons. First, the application of Title VII is limited to employers who have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The legislative history of Title VII indicates that one purpose of this limitation is to protect small entities from the high costs of litigating employment discrimination claims.[2] *Tomka*, 66 F.3d at 1314; *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1281. "If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Miller*, 991 F.2d at 587.

Second, prior to the Civil Rights Act of 1991 ("1991 Act"), "a successful Title VII plaintiff was typically limited to reinstatement and backpay as potential remedies." *Tomka*, 66 F.3d at 1314. These remedies are "most naturally provided by employer-entities," rather than individuals. *Id.* at 1315. Many Title VII plaintiffs have argued that Congress negated this factor when it added compensatory and punitive damages to the remedies available under Title VII in the 1991 Act. These plaintiffs note that "money damages are of the type that an individual can normally be expected to pay." *Id.*

Nevertheless, Title VII's definition of "an employer" predates the 1991 Act, and before the passage of the 1991 version, Title VII clearly did not permit compensatory or punitive damages. The Court may thus infer that prior to 1991, an employee could not be sued under Title VII. *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1281. Furthermore, Congress did not indicate an intent to change this rule in the 1991 Act. *Tomka*, 66 F.3d at 1315. As the Seventh Circuit observed, "[i]t is a long stretch to conclude that Congress silently intended to abruptly change its earlier vision through an amendment to the reme-

---

**2.** One federal district court, holding that Title VII imposes individual liability on "agents," relied on its observation that another possible purpose for this size restriction is "to protect small family-run businesses from discriminatory hiring claims based on their preference for hiring friends and relatives." *Lamirande v. Resolution Trust Corp.*, 834 F.Supp. 526, 528 (D.N.H.1993).

In *Tomka*, the Second Circuit acknowledged that Congress desired the size restriction to "protect[] ... intimate and personal relations existing in small businesses" as well as shield those small businesses from the high costs of employment litigation. 66 F.3d at 1314. The two factors, however, are far from mutually exclusive.

dial portions of the statute alone." *AIC Sec. Investigations Ltd.*, 55 F.3d at 1281.

Third, the remedial provisions of the 1991 Act themselves provide further indication that Congress did not intend to impose Title VII liability on individuals. "[A]lthough it allowed new types of damages, the [1991 Act] limited the amount of monetary recovery under Title VII ... by placing caps on the total amount of compensatory and punitive damages that could be awarded to any complaining party." *Id.; see* 42 U.S.C. § 1981a(b)(3) (1994). According to this statutory scheme,

> Congress enacted a sliding scale of caps, increasing the possible award as the number of employees of a liable party increased. The lowest cap is $50,000, 'in the case of a respondent who has more than 14 but fewer than 101 employees.' Congress enacted no cap for individuals. That omission implies it did not consider individuals liable.

*Id.* (citing 42 U.S.C. § 1981a(b)(3)(A)); *Miller*, 991 F.2d at 588 n. 2.

Thus, the language and structure of Title VII have led most federal appellate courts to conclude that "[w]hile a construction of [Title VII] to impose individual liability on an agent is facially plausible," Congress did not intend to render individuals liable under the statute. *Gary*, 59 F.3d at 1399. Rather, Congress simply intended its reference to agents in section 2000e(b) to "incorporate respondeat superior liability into the statute." *Id.* (quoting *Miller*, 991 F.2d at 587). While this Court "[does] not doubt that the employment discrimination statutes have broad remedial purposes and should be interpreted liberally, ... [a] liberal construction does not mean one that flies in the face of the structure of the statute." *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1282.

Finally, Plaintiff has advanced no countervailing policy considerations to persuade the Court that it ought to impose Title VII liability on individuals. This Court thus finds persuasive the assessment of the Seventh Circuit that "[t]he employing entity is still liable, and that entity and its managers have the proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability." *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1282.[3]

For all of these reasons, the Court finds that Title VII does not impose liability on individuals in their individual capacities. *See also Candelaria v. Board of Regents*, 1994 WL 774551 66 F.E.P. Cases 765, 767–68 (D.N.M.1994) (Campos, J.) (finding no individual liability under Title VII); *Richardson v. Southland Corp.*, Civ. 93–1252 JC, slip op. at 2–4, 1994 WL 901641 (D.N.M. filed June 28, 1994) (Conway, J.) (same); *Ralston v. Kelly Elec.*, Civ. 93–1031 JB, slip op. at 2–3 (D.N.M. filed Mar. 1, 1994) (Burciaga, C.J.) (dicta, same); *but see Snowdon v. State Farm Mut. Auto. Ins. Co.*, Civ. 93–0597 MV, slip op. at 1–3 (D.N.M. filed Mar. 5, 1996) (Vázquez, J.) (imposing individual liability under Title VII on basis of language in *Ball*, 54 F.3d at 666–68). The Court will therefore dismiss Plaintiff's claims under Title VII against Defendants Montano, Madrid, Garcia, Tapia, and Martinez in their individual capacities. Furthermore, because it will dismiss these claims for the reasons discussed *supra*, the Court need not consider Defendants' argument that these claims must fail because Plaintiff did not name the individual Defendants in the charge of discrimination that she filed with the Equal Employment Opportunity Commission.

## B. Defendants' November 6, 1995 Motion to Dismiss Plaintiff's Claims Under 42 U.S.C. § 1983

█ In their November 6, 1995 motion to dismiss, Defendants seek to dismiss Plain-

---

**3.** The Seventh Circuit did note that "increasing the number of potentially liable defendants [c]ould increase deterrence" of employment discrimination for various reasons. *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1282. For example, potentially liable employees might fear personal liability more than employer discipline, and potential plaintiffs, having more potential defendants from which to choose, might bring suit more frequently. *Id.; see also* Scott B. Goldberg, Comment, *Discrimination by Managers and Supervisors: Recognizing Agent Liability Under Title VII*, 143 U.Pa.L.Rev. 571, 584–87 (1994) (arguing that individual liability under Title VII would probably increase deterrence of employment discrimination). However, "Congress has struck a balance between deterrence and societal cost, and [this Court] will not upset that balance." *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1282.

tiff's claims under 42 U.S.C. § 1983 on the basis of the statute of limitations. Defendants apparently brought this motion under Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mem.Supp.Mot. Dismiss Pl.'s Claims Under 42 U.S.C. § 1983 at 1–2). However, both Plaintiff and Defendants have attached matters outside the pleadings to Plaintiff's response and Defendants' reply, respectively. Under Federal Rule of Civil Procedure 12(c), "[a] motion to dismiss for failure to state a claim, or a motion for judgment on the pleadings, shall be treated as a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the court." *Gaines v. Ski Apache*, 8 F.3d 726, 728 n. 2 (10th Cir. 1993); Fed.R.Civ.P. 12(c). Neither party has requested the Court to exclude the outside matters presented, and the Court will therefore treat Defendants' motion to dismiss as a motion for summary judgment to the extent required by the outside matters presented.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.1995) (quoting Fed. R.Civ.P. 56(c)). The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment." *Eaton v. Jarvis Prods. Corp.*, 965 F.2d 922, 925 (10th Cir.1992).

■ The parties do not dispute that in this jurisdiction, the statute of limitations period for claims under 42 U.S.C. § 1983 is three years. *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir.1984), *aff'd*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Plaintiff filed this action on May 17, 1995. Thus, events forming the basis of Plaintiff's section 1983 claims must have occurred on or after May 17, 1992. "The key to recovery is for the plaintiff to show that a violation, and not just the effects of a violation, extended into the statutory period." *Bruno v. Western Elec. Co.*, 829 F.2d 957, 960 (10th Cir.1987).

According to Defendants, Plaintiff has failed to allege that Defendants discriminated or retaliated against her on or after May 17, 1992. Plaintiff disputes .Defendants' contention, asserting that (1) she has alleged that Defendants discriminated against her on or after May 17, 1992, and (2) her allegations that Defendants discriminated against her before that date may also form the basis of her section 1983 claims, because these allegations, taken with her allegations of discrimination on or after this date, constitute a continuing violation.

■ "Under the continuing violation theory, a plaintiff who shows a continuing policy and practice [of discrimination] that operated within the statutory period has satisfied the filing requirements." *Id.* Furthermore, "[t]he continuing violation can be either a company-wide policy of discrimination or a series of related acts taken against a single individual." *Id.* at 961. With respect to the former type of continuing violation, Plaintiff must show "some application of the policy within [the statutory] period." *Id.* Likewise, with respect to the latter type of continuing violation, Plaintiff must show that "one or more of [the series of related acts taken against her] falls within the limitations period." *Id.*

Defendants do not appear to dispute Plaintiff's assertion that she has alleged both a department-wide policy of discrimination and a series of related discriminatory acts taken against her. (*See generally* Defs.' Reply Pl.'s Resp. Defs.' Mot. Dismiss Claims Under 42 U.S.C. § 1983). Furthermore, the Court finds that Plaintiff has sufficiently plead both of these types of continuing violations. (Pl.'s Compl. ¶¶ 13 (alleging hostile work environment), 14–17 (alleging that Defendants failed to promote Plaintiff on bases of sex and race), 18 (alleging that Defendants maintained pattern and practice of discriminatory failure to promote), 19 (alleging that Plaintiff "and other staff" were continually subjected to sexual harassment), 20–24 (alleging that Defendants continued to harass Plaintiff after she filed administrative complaint), and 26 (alleging "continuing harassment and retaliation" by coworkers and supervisors)). Defendants do dispute, however, whether

Plaintiff has alleged that some application of Defendants' discriminatory policy, or one or more of the series of related discriminatory acts taken against Plaintiff, occurred within the limitations period.

Plaintiff's response to Defendants' argument is twofold. First, Plaintiff claims that her May 28, 1992 involuntary resignation occurred within the statutory period. The parties do not dispute that Plaintiff resigned on this date. However, the Court hesitates to characterize this resignation as an act of Defendants, because it occurred when Plaintiff chose, although allegedly not of her own volition.

Second, Plaintiff observes that she has also alleged that Defendants continued to discriminate and retaliate against her "[t]hroughout the month of May, 1992," (Pl.'s Compl. ¶ 26), through County Personnel Director Paul O'Donoghue, who refused to offer Plaintiff any viable alternative positions with the County. Indulging all reasonable inferences in Plaintiff's favor, *Weatherhead*, 832 F.2d at 1228, the Court may properly infer from this allegation that Defendants, through Mr. O'Donoghue, continued to discriminate and retaliate against Plaintiff on or after May 17, 1992.

Furthermore, to the extent that the Court must consider this motion as one for summary judgment, the evidence Plaintiff has submitted reinforces this inference. Plaintiff has testified by affidavit that "during the weeks of May 18 and May 25, 1992, while on a medical leave of absence, [she] contacted Mr. O'Donoghue at least every other day regarding [her] medical condition and scheduling needs." (Newsome Aff. ¶ 2). She has also stated that "[s]everal days before [her] resignation on May 28, 1992," Mr. O'Donoghue told her that the only alternative positions available to her were positions without the possibility of advancement. (*Id.*) Finally, Plaintiff has produced a letter from Terrence Brennan, Santa Fe County Attorney, to Brenda Rael of the New Mexico Department of Labor, in which Mr. Brennan admits that Mr. O'Donoghue spoke with Plaintiff on May 22, 1992, regarding the possibility of her returning to work with the Department. (*Id.* Ex. A). Thus, not only has Plaintiff alleged

that some application of Defendants' discriminatory policy, or one or more of the series of related discriminatory acts taken against her, occurred on or after May 17, 1992, but she has also produced evidence tending to establish a genuine issue of material fact on this point.

Defendants nonetheless argue that they could not have applied a discriminatory policy or otherwise discriminated against Plaintiff on or after May 17, 1992, because Plaintiff was not present at work from May 12 to May 27, 1992, and resigned on May 28, 1992. Defendants have also submitted evidence to this effect. Plaintiff admits that she was on medical leave of absence, and so was not present at work, from May 12 to May 27, 1992, and that she resigned on May 28, 1992. However, the allegations and evidence discussed *supra* tend to show that during her leave of absence Plaintiff remained employed by Defendants, negotiated with the County personnel director regarding alternative positions, and continued to experience discrimination and retaliation in the course of these negotiations. These allegations and evidence undermine Defendants' argument that no discrimination or retaliation could have occurred during this time.

In sum, the Court finds that Plaintiff has sufficiently alleged that Defendants' discrimination and retaliation constituted both a department-wide policy and a series of related acts taken against Plaintiff. Also, Plaintiff has alleged and produced evidence tending to show that some application of the policy, and one or more of the series of related acts taken against Plaintiff, occurred on or after May 17, 1992. The Court will therefore deny Defendants' November 6, 1995 motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983 on the basis of the statute of limitations.

### III. Conclusion

The Court will grant Defendants' July 18, 1995 motion to dismiss Plaintiff's claims under Title VII against Defendants Montano, Madrid, Garcia, Tapia, and Martinez in their individual capacities. The statute's exclusion of small employers from liability and its remedial provisions demonstrate that Title VII

does not impose liability on individuals. Furthermore, the Court has discerned no policy considerations that would compel a different result.

However, the Court will deny Defendants' November 6, 1995 motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983. Plaintiff has sufficiently alleged that Defendants' discrimination and retaliation constituted both a department-wide policy and a series of related acts taken against Plaintiff, and that some application of the policy, and one or more of the series of acts taken against Plaintiff, occurred within the statutory period. Thus, according to the continuing violations theory, Plaintiff timely filed her section 1983 claims under the applicable statute of limitations.

An Order in accordance with this Memorandum Opinion will issue.