Phillip W. THORNTON, Plaintiff,

v.

Sheila KAPLAN, individually and in her official capacity a President of Metropolitan State College of Denver; Joan M. Foster, individually and in her official capacity as Provost and Vice President of Academic Affairs for Metropolitan State College of Denver; R. Michael Brown, individually and in his official capacity as Dean of the School of Business for Metropolitan State College of Denver; Virginia Parker, individually and in her official capacity as the Chairperson of the Department of Accounting, School of Business for Metropolitan State College of Denver; David Skougstad, individually and in his official capacity as Chairperson of the Retention, Promotion and Tenure Committee of the Department of Accounting, School of Business for Metropolitan State College of Denver; Larry Lombard, individually and in his official capacity as the Accounting Department representative to the Retention, Promotion, and Tenure Committee of the School of Business for Metropolitan State College of Denver; Nancy T. Frontczak, individually and in her official capacity as Chairperson of the Retention, Promotion and Tenure Committee of the School of Business for Metropolitan State

College of Denver; James Fleming; Anne Steinbeck; Aims C. McGuinness; John Roybal, Harriet Barker; and George Brantley, in their official capacities as Trustees of State Colleges in Colorado; and Metropolitan State College of Denver, Defendants.

Civil Action No. 95–WY–1520–AJ.

United States District Court,
D. Colorado.

June 7, 1996.

Paul Anthony Baca, Denver, CO, for Phillip W. Thornton.

Gregory A. Eurich, Holland & Hart, LLP, Denver, CO, Thomas J. Lyons, Cathy H. Greer, Hall & Evans, Denver, CO, William J. Higgins, Attorney General's Office, Tort Litigation Section, Denver, CO, for Sheila Kaplan, Joan M. Foster, Virginia Parker, David Skougstad, Nancy T. Frontczak, Larry Lombard.

William J. Higgins, Attorney General's Office, Tort Litigation Section, Denver, CO, Thomas J. Lyons, Cathy H. Greer, Hall & Evans, Denver, CO, for R. Michael Brown.

William J. Higgins, Attorney General's Office, Tort Litigation Section, Denver, CO, for James Fleming, Anne Steinbeck, Aims C. McGuinness, John Roybal, Harriet Barker, George Brantley, Metropolitan State College.

## ORDER AND DECISION ON DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge, Sitting by designation.

The defendants' motions to dismiss and for summary judgment came before the Court for hearing on May 23, 1996. Counsel for the parties appeared and presented their respective arguments on the motions at the hearing. The Court, having considered the motions, the plaintiff's responses to the motions, the materials filed by the parties in support of their respective positions, the arguments of counsel at the hearing, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background and Contentions of the Parties

At all times, plaintiff was a full time faculty member of the Department of Accounting, School of Business at Metropolitan State College of Denver. Although the complaint does not so state, he is a white male. Defendants Fleming, Steinbeck, McGuinness, Roybal, Barker and Brantley are Trustees of the Board of State Colleges of Colorado, which is the controlling body of the college, and all other defendants are faculty members and college employees in varying capacities.

In his complaint, plaintiff asserts that he had been employed at the college as an assistant professor from 1990 to the present pursuant to a series of one-year contracts. In the fall of 1994, plaintiff applied for tenure, with his tenure application accompanied by a dossier prepared by him in support of his tenure application. The dossier package was reviewed by the college employee defendants who participated in the tenure process, and on February 8, 1995, plaintiff's application for tenure was denied by defendant Kaplan, the college president. Plaintiff formally appealed the denial of his application for tenure, and the department of accounting's tenure appeal committee recommended that plaintiff be granted tenure. Kaplan refused to reconsider the tenure application. Plaintiff also asserts that defendant Parker, chairperson of the accounting department, gave plaintiff a job performance rating in April of

1995 that was not commensurate with his actual job performance, although he had always received good to excellent peer ratings in the past, affecting his salary for the 1995–96 academic year.

Plaintiff claims that in early to mid–1995, he injected himself into a dispute involving an applicant for a position in the accounting department who had been rejected as a candidate because of comments attributed to the applicant during the interview process regarding religion, homosexuals, and women. In an accounting department hiring meeting, plaintiff intervened on the rejected applicant's behalf (a Dr. Ames from Nebraska), objecting to how Dr. Ames had been treated. When contacted later by Dr. Ames who was asking why he had not been selected for the position, plaintiff told Dr. Ames about irregularities in the voting procedure of the department's hiring committee and that he believed Ames had been treated discriminatorily by the hiring committee and departmental leadership.

A heated exchange took place between plaintiff and Virginia Parker, involving the Ames matter. In a faculty meeting in which candidates were discussed, plaintiff claims that defendant Parker made inappropriate references about Dr. Ames, his religious affiliation and statements that she said Dr. Ames had made concerning gays and women while they were riding to the airport together in a car. In the department meeting, plaintiff protested the discriminatory manner in which Dr. Ames' application had been treated. Plaintiff states that this visibly angered Dr. Parker. Plaintiff also claims that defendant Parker, outside of the tenure process and contrary to established tenure procedure, told defendant Frontczak (who was the chairperson of the School of Business committee) that plaintiff was also a racist, a sexist and had had a divisive influence in the accounting department. Plaintiff also claims that he was chastised openly, in an accounting department meeting held in October of 1994, by defendant Parker for challenging her actions regarding the Ames application.

After the events involving Dr. Ames, plaintiff was requested by another tenured faculty member to meet with the Dean of the School of Business to discuss those specific problems. Plaintiff says he was reluctant to do so because he was concerned he would be retaliated against if he did speak out about matters concerning Dr. Ames' interview. After the plaintiff agreed to and did meet with the Dean and Associate Dean, the Dean was terminated summarily by the college president "for attempting to institute an investigation of the charges made by plaintiff and others" which reflects a "coverup of the unlawful and discriminatory treatment of Dr. Ames." Complaint, ¶ 32.

Plaintiff asserts that Dr. Parker, Chairperson of the Accounting Department, then orchestrated an attack on plaintiff for his actions in revealing the discussions that took place in the departmental hiring meeting regarding Dr. Ames. Complaint, ¶ 33. After all of this occurred, plaintiff's application for tenure was rejected and continued to be rejected through the available appeal process within the institution. In his complaint, plaintiff asserts a number of claims for relief, including:

First: as a result of the intentional, willful and oppressive acts of the defendants, plaintiff has been denied rights to procedural due process as secured to him by the Fourteenth amendment.

Second: denial of procedural due process as secured by the Fourteenth Amendment, 42 U.S.C. §§ 1981 and 1983.

Third: denial of rights to equal employment opportunities, 42 U.S.C. § 2000e et seq.

Fourth: intentional infliction of emotional distress

Fifth: denial of implied contract of continued employment

Sixth: (against defendants Parker, Skougstad, and Frontczak only) defamation

Plaintiff seeks injunctive relief in the form of reinstatement to his former position with tenure, compensatory damages, punitive damages and costs including attorney's fees.

The defendants in this action include:

1. Metropolitan State College of Denver ("MSCD")—an institution of higher learning created under the laws of State of Colorado, employing more

than 15 persons, and an employer within the meaning of 42 U.S.C. § 2000e

2. Sheila Kaplan—President of MSCD, in her individual and official capacities

3. Joan M. Foster—Provost and Vice President of Academic Affairs, in her individual and official capacities

4. R. Michael Brown—Dean of School of Business, in his individual and official capacities

5. Virginia Parker—Chairperson of Department of Accounting, in her individual and official capacities

6. David Skougstad—Chairperson of Retention, Promotion and Tenure Committee of Department of Accounting, in his individual and official capacities

7. Larry Lombard—Accounting Department representative to the Retention, Promotion and Tenure Committee of the School of Business for MSCD, in his individual and official capacities

8. Nancy T. Fronctzak—Chairperson of Retention, Promotion and Tenure of Committee of the School of Business in her individual and official capacities

9. Trustees: James Fleming, Anne Steinbeck, Aims C. McGuinness, John Roybal, Harriet Barker, and George Brantley (all in their official capacities only)

A number of motions are now before the Court. Defendants Metropolitan State College of Denver and Board of Trustees (defendants Fleming, Steinbeck, McGuinness, Roybal, Barker, and Brantley) have moved to dismiss the following claims for relief for the following reasons:

First, Second, Fourth, Fifth—Barred by the Eleventh Amendment;

First, Second—Failure to state a claim; (also request summary judgment on this claim)

Third—Relief available under this claim is limited.

Defendants Kaplan, Foster, Brown, Parker, Skougstad, Lombard and Frontczak have filed a Motion to Stay, pending a ruling on the qualified immunity issues.

Defendants Kaplan, Foster, Brown, Parker, Skougstad, Lombard and Frontczak filed a motion for summary judgment. In this motion, the defendants seek dismissal of all of the individual capacity claims against each of them. As to the official capacity claims, these defendants state that, "To any extent that these defendants are named in their official capacities, their defenses equate to those presented by their co-defendants in a pending motion to dismiss, which are reiterated as though set out in full."

As to the Title VII claim, the individual defendants argue that under Title VII, the suits against individuals must proceed in their official capacities only, citing *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993).

█ The defendants argue that the plaintiff did not plead a civil rights conspiracy claim under Section 1985(3) and there are no facts supporting such a claim. In his responsive papers, plaintiff has also requested to amend the complaint, in order to assert specifically by statute number a Section 1985 conspiracy to violate civil rights claim. From a review of the pretrial order entered previously in this case, it is clear that this claim has been pleaded and the parties are all aware of the claim. The defendants then argue that the elements of a Section 1985 claim do not exist in this case. Those elements include 1) a conspiracy, 2) "for the purpose of depriving, directly or indirectly, any person or class of persons of equal protection of the laws or of equal privileges and immunities under the laws", 3) that the conspirators committed some act in furtherance of the conspiracy, 4) that the plaintiff was either "injured in his person or property" or was "deprived of having and exercising any right or privilege of a citizen of the United States," citing *Griffin v. Breckenridge*, 403 U.S. 88, 103–04, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). The conspiracy must be motivated by some racial, or perhaps class-based, invidiously discriminatory animus.

█ Defendants seek dismissal of the Section 1981 claim, as plaintiff has not alleged the elements of such a claim. The elements of a Section 1981 claim are 1) that plaintiff

was discriminated against on the basis of race, 2) that defendants intended to discriminate, and 3) that the discrimination complained of occurred in one of the activities specified in Section 1981, such as the making and enforcement of contracts. In the responding papers, plaintiff concedes defendants' argument regarding 42 U.S.C. § 1981 since the underlying facts do not involve discrimination on the basis of race or national origin. Plaintiff acknowledges that Section 1981 does not reach discrimination based upon religion.

As to the Section 1983 claims, the individual defendants argue that they are entitled to qualified immunity. They suggest that the threshold inquiry should be whether a constitutional violation has occurred at all, citing *Centanni v. Eight Unknown Officers,* 15 F.3d 587, 589 (6th Cir.1991), *cert. denied,* —— U.S. ——, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). Only if the court finds that plaintiff has stated a constitutional violation does the court then examine whether clearly established constitutional rights were involved of which a reasonable person would have known.

These individual defendants further argue that plaintiff had no "property interest" protected by due process clause of the Fourteenth Amendment, and therefore, that they are entitled to qualified immunity as to those claims. General Colorado law provides that employees are terminable at will, and that termination can be accomplished without cause or notice and does not give rise to a cause of action. Plaintiff has the burden of proving that he was an employee with a continued expectation of employment, a property interest, and was not terminable at will.

Here, plaintiff argues that he had an expectation that his application for tenure would receive due consideration and would be treated in accordance with the established policies of the institution by impartial decision makers. He does not argue that he had an entitlement to tenure, but rather that because of his involvement in the Ames matter, his constitutional rights to free speech were violated when tenure was denied him because he opposed an allegedly discriminatory practice. Plaintiff asserts that the denial of tenure was retaliation against him because he opposed the practices that were employed to eliminate Dr. Ames from consideration for employment at the college, practices he contends are actionable under Title VII. Plaintiff reasons that under existing college policies, he has in effect been denied a property right, as he is without a job at the end of the 1996 academic year. Under those established policies, he will receive no further renewal contracts at MSCD in the future. He also asserts that denial of tenure will also affect his employment prospects with other institutions, especially when an institution of the caliber of MSCD has denied him tenure.

The College and Trustees have not filed a motion with respect to the Title VII claim, except in the motion to dismiss filed by the college and the trustees, those defendants argue that the relief available to plaintiff is limited. Defendants argue punitive damages cannot be recovered in this matter and that recoverable compensatory damages must be capped at $300,000.00.

Plaintiff concedes that certain claims should be dismissed. These include the Section 1983 claim against the Trustees in their official capacities and against the College, and the Section 1981 claim against all defendants as there are no allegations asserting discrimination on the basis of race or national origin.

### Standard of Review

In *Lucero v. Gunter,* 52 F.3d 874, 877 (10th Cir.1995), the Tenth Circuit stated the following regarding motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6):

"A motion to dismiss pursuant to Rule 12(b)(6) is treated as a [Rule 56] motion for summary judgment when premised on materials outside the pleadings, and the opposing party is afforded the same notice and opportunity to respond as provided in Rule 56." *Hall v. Bellmon,* 935 F.2d 1106, 1110–11 (10th Cir.1991). In the instant case, the district court considered materials outside the pleadings in the form of affidavits submitted by Defendants in ruling upon the motion to dismiss. Additionally, Plaintiff was afforded an opportunity to respond and submitted opposing affida-

vits in response to the government's motion. Accordingly, exercising our plenary power, we treat the district court's dismissal as a grant of summary judgment under Fed.R.Civ.P. 56. *See Redmon [v. United States]*, 934 F.2d [1151] at 1155 [ (10th Cir.1991) ].

We review the district court's grant of summary judgment de novo. *Eaton v. Jarvis Prods. Corp.*, 965 F.2d 922, 925 (10th Cir.1992). Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Id.* We view the evidence and draw any inferences therefrom in the light most favorable to the party opposing summary judgment. *Id.*

## Discussion

### I. Eleventh Amendment immunity

■ The Court has concluded that plaintiff's state law based claims against the Trustees and the College are barred by Eleventh Amendment immunity. The Court has been unable to identify any unequivocal consent to suit against the State of Colorado in federal court nor has the Court been able to identify any waiver of sovereign immunity that would permit this Court to proceed to hear such claims against the state in federal court. The Court also notes that the plaintiff has conceded that Eleventh Amendment immunity bars his claims against MSCD and the Trustee defendants with respect to damages and retroactive relief, as those are claims against the state. Plaintiff has argued that he is only requesting prospective relief and that only the trustee defendants can grant him tenure, the relief he specifically desires be accorded to him at the conclusion of this lawsuit.

The Tenth Circuit, in *Hamilton Manufacturing Co. v. Trustees of State Colleges in Colorado*, 356 F.2d 599 (10th Cir.1966), held that an action against the trustees is the same as an action against the State of Colorado. Colorado has not consented to suit in federal court and there is no applicable waiver or consent to suit in this instance that would permit the Court to proceed to hear the case involving the Trustees of the State

Colleges. These principles have been reiterated and adhered to recently by the Tenth Circuit in *Johns v. Stewart*, 57 F.3d 1544 (10th Cir.1995). There, the Tenth Circuit stated that the Eleventh Amendment bars suit against the state in federal court, and the rule is applicable whether the relief sought is equitable or legal. Only where the suit involves a continuing violation is a suit against the state seeking prospective relief permitted to proceed in federal court.

Clearly, in substance the relief plaintiff seeks from the State of Colorado in this case is retroactive rather than prospective in nature. Plaintiff seeks damages from the state as well as the grant of tenure at the institution. This is not the type of relief which seeks to remedy a continuing violation of law and provides no basis to find that Eleventh Amendment immunity does not bar suit against the State of Colorado in this case. *See also Mascheroni v. Board of Regents of University of California*, 28 F.3d 1554 (10th Cir.1994) (discussing "arm-of-the-state doctrine" and Eleventh Amendment immunity). The Court also finds that as to the pendent state claims, the Eleventh Amendment bars suit brought in federal court against the trustees and the college.

### II. Title VII claim against MSCD and Trustees

This leaves for trial only the Title VII claim against MSCD and the Trustees in their official capacities. These defendants have argued that under Title VII the scope of relief available is limited. Plaintiff conceded in his Brief in Opposition that these defendants are not liable for damages or compensatory damages in excess of $300,-000.00 on the Title VII claim pursuant to the Civil Rights Act of 1991. However, plaintiff has sought injunctive relief, specifically seeking reinstatement and the award of tenure. Plaintiff stated in his brief also, that if this Court decides not to follow the approach of courts holding that the remedial purpose of Title VII is to make a victim of invidious discrimination whole, citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425–26, 95 S.Ct. 2362, 2375–76, 45 L.Ed.2d 280 (1975); *Kunda v. Muhlenberg College*, 621 F.2d 532, 546–547

(3d Cir.1980); *Brown v. Trustees of Boston University,* 891 F.2d 337 (1st Cir.1989); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir.1988); *Fields v. Clark University,* 817 F.2d 931 (1st Cir.1987). Plaintiff has reserved the right to request front pay and such other damages as have been requested in his prayer for relief.

■■■ With respect to issues concerning this Court's ability to order reinstatement and tenure, this Court offers the following observations. Tenure has been ordered in Title VII cases, but it is a "significantly more intrusive remedy than remedies ordinarily awarded in Title VII cases, such as reinstatement or seniority, because a judicial tenure award mandates a lifetime relationship between the University and the professor." *Brown v. Trustees of Boston University,* 891 F.2d 337, 359 (1st Cir.1989). Although courts should be "extremely wary of intruding into the world of university tenure decisions," *Brown v. Trustees of Boston University,* 891 F.2d at 359, once a university has been found to have impermissibly discriminated in making a tenure decision, remedial provisions of Title VII requires courts to fashion the most complete relief possible. "{A} court should deny "make whole" relief "only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." " *Id.*

■■■ Title VII permits equitable remedies, such as reinstatement. *Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir.1988). This is consistent with the overall goal that a successful Title VII plaintiff be made whole.

> While a few courts have indicated a willingness to award reinstatement with tenure as a remedy in discrimination cases, ... we believe such relief will, in most cases, entangle the courts in matters best left to academic professionals. Accordingly, such relief should be provided in only the most exceptional cases. Only when the court is convinced that a plaintiff reinstated to her former faculty position could not receive fair reconsideration (i.e. consideration without the taint of discrimination) of

her tenure application should it order reinstatement with tenure. We are unable to make this determination at this stage of the case.

*Gutzwiller v. Fenik,* 860 F.2d at 1333 (citations omitted).

This Court is similarly unable, at this stage of the case, to make any determinations as to whether reinstatement with a corresponding order to grant tenure is an appropriate remedy. It is only a most extraordinary case that would compel this Court to entangle itself in those matters that are best left to the academic community. The Court declines to make such a determination at this stage and will revisit the issue following presentation of the evidence at trial.

### III. Section 1981 claim against all defendants

Plaintiff concedes that the Section 1981 claim against all defendants fails as there are no allegations asserting discrimination on the basis of race or national origin.

### IV. Section 1985 claim against all defendants

■■■ The Court finds that the Section 1985 claim should be dismissed as to *all* defendants named in plaintiff's complaint. The Court will permit the requested amendment of plaintiff's complaint so as to allow the clearly pleaded claim for relief pursuant to Section 1985. Notwithstanding such amendment, however, the Court believes that the Section 1985 claim should be dismissed for the reason that it does not assert a class-based or racially discriminatory animus as is necessary to state a cognizable claim for violation of the civil rights conspiracy statute. *Bisbee v. Bey,* 39 F.3d 1096, 1101 (10th Cir. 1994), citing *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

### V. Punitive damages claim under all counts

■■■ In this case, plaintiff has alleged that he is entitled to recover punitive damages in this case, although he has not specified in his complaint which claims for relief

justify the award of punitive damages. Plaintiff has not pleaded punitive damages as a separate claim for relief.

■ The Court will dismiss plaintiff's claim for punitive damages as to all claims for relief pleaded in the complaint. The facts in this case do not justify instruction on punitive damages with respect to the state law claims against any defendant. Further, punitive damages are not recoverable against the state (i.e., MSCD) or its employees in their official capacities under Section 1983. Section 102 of the Civil Rights Act of 1991; *see also e.g., Garrett v. Clarke County Board of Education,* 857 F.Supp. 949, 952 (S.D.Ala. 1994), citing cases.

The 1991 Civil Rights Act created a punitive damages remedy for cases of intentional discrimination in employment. It allows the award of punitive damages if "the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."[1] In a Title VII claim, the 1991 Act also limits recovery of combined compensatory and punitive damages, depending upon the size of the employer.[2] In this case, the facts simply do not demonstrate engagement in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of the plaintiff so as to justify any award of punitive damages.

1. Section 102 of the Civil Rights Act of 1991, PL–102–166, 1991 S 1745, provides in part as follows:

(b) Compensatory and Punitive Damages.— (1) Determination of Punitive damages.—A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

2. Section 102 of the Civil Rights Act of 1991, provides in part:

(3) Limitations.—The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional

## VI. Section 1983 Claim

### A. Qualified Immunity and Free Speech— First Amendment

The plaintiff's Section 1983 claims require a more complex analysis. Under Section 1983, Title 42 U.S.C. § 1983 is a broadly written statute. It provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or any other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Courts state consistently that Section 1983 does not grant any substantive rights; it provides a mechanism for the vindication of federal constitutional or statutory violations by persons acting under color of state law. Section 1983 provides that any person who acts under color of state law to deprive a citizen of any rights, privileges, or immunities secured by the United States Constitu-

pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary loss, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000;

(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000;

(D) in the case of a respondent who has more than 500 in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000[.]

tion and laws, is liable to the injured party. 42 U.S.C. § 1983.

The purpose of Section 1983 is to deter state actors from using the badge of their state authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U.S. 158, 161–163, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992),[3] citing *Carey v. Piphus,* 435 U.S. 247, 254–257, 98 S.Ct. 1042, 1047–1048, 55 L.Ed.2d 252 (1978). Section 1983 does not provide a source of substantive rights. The civil rights statute provides liability for violations of federal rights protected by the Constitution, not for violations of duties of care arising out of tort law. *Baker v. McCollan,* 443 U.S. 137, 144–146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Furthermore, for purposes of Section 1983, states and state subdivisions are not persons subject to suit under Section 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). This leaves for consideration in this proceeding only the Section 1983 claims against the individual defendants in their individual capacities.

A defendant in a Section 1983 case may assert that he or she is entitled to qualified immunity. Qualified immunity will shield a defendant state actor from liability and the burden of having to go to trial unless the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Moore v. City of Wynnewood,* 57 F.3d 924, 931 (10th Cir.1995), citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This requires the court to first assess whether the plaintiff has asserted a violation of a constitutional right at all, and then to evaluate whether any legitimately asserted rights implicated by the defendant's activities were clearly established at the time. *Id.*

In this case, the individual defendants have asserted they are entitled to qualified immunity. Plaintiff has argued that they are not entitled to qualified immunity, for the reason that clearly established rights have been violated which were or should have been known at the time the defendants violated plaintiff's rights. The plaintiff argues that the defendants' conduct violated clearly established First Amendment free speech rights of public employees. Plaintiff argues that he was not granted tenure in retaliation for his outspoken opposition to allegedly discriminatory practices by the College, particularly with regard to the Ames matter. This is sufficient to state a valid First Amendment claim under clearly established Tenth Circuit and United States Supreme Court precedent.

The Tenth Circuit employed such an analysis in *Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996), to require courts to make a determination whether speech was protected by the First Amendment when deciding whether a defendant is entitled to qualified immunity. In that case, the circuit court stated:

The doctrine of qualified immunity generally shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ... In *Chapman v. Nichols,* 989 F.2d 393, 397 (10th Cir.1993), we stated that "a reasonably competent public official should know the law governing his conduct." A "precise factual correlation between the then-existing law and the case at-hand is not required." ... The law is clearly established, "when it is well developed enough to inform the reasonable official that his conduct violates that law." ... In determining whether the law involved was clearly established, we examine the law as it was at the time of the Defendants' actions.... "[T]he plaintiff need not show that the specific action at issue has previously been held unlawful," he need only show that the alleged unlawfulness was apparent in light of preexisting law.... "Ordinarily, in order for the law to be clearly established, there must a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the

---

**3.** Also holding that the qualified immunity doctrine does not apply in § 1983 suits brought against private individuals (nonpublic officials) acting under color of state law.

law to be as the plaintiff maintains".... Considering these principles, we conclude that the complaint in this case properly states a claim, and that it is premature, absent a factual record, to grant qualified immunity on the basis of these pleadings.

In light of the well established principle that the government may not deny a benefit to a person because of his constitutionally protected interests, ... and the well established framework of the Tinker analysis, we cannot say at this point that Defendants are entitled to qualified immunity. Resolving all reasonable inferences in Brian's favor, the complaint states a claim that Defendants violated clearly established law when Brian was dismissed from the football team because of his speech. However, this does not foreclose Defendants from reasserting their entitlement to qualified immunity on a motion for summary judgment should Brian's allegations in the complaint prove to be unfounded. Cf. *Behrens v. Pelletier,* —— U.S. ——, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (holding that a defendant's immediate appeal of an unfavorable qualified immunity determination on a motion to dismiss does not deprive the court of appeals of jurisdiction over a second appeal, also based on qualified immunity, following denial of defendant's motion for summary judgment). Based on our review of the complaint in this case, we conclude that the district court erred in its determination that Defendants are entitled to qualified immunity on a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6).

This claim must be dismissed against the college and the trustees, as they are not persons within the meaning of Section 1983, a point conceded by plaintiff in his responsive pleadings.

However, the issues are less well defined as to the remaining individual defendants. Here plaintiff contends, and this Court accepts as true, as it is required to do on a motion for summary judgment, that the speech at issue was a matter of public concern that went to the heart of the selection process employed by the institution. *See also e.g., Ramirez v. Oklahoma Department of Mental Health,* 41 F.3d 584 (10th Cir. 1994); *Walter v. Morton,* 33 F.3d 1240 (10th Cir.1994); *Langley v. Adams County, Colorado,* 987 F.2d 1473 (10th Cir.1993); *Considine v. Board of County Commissioners of the County of Adams,* 910 F.2d 695 (10th Cir.1990) (all cases discussing free speech/first amendment rights of public employees).

It is clearly established law in this circuit that the government may not deny a benefit to a person because of his constitutionally protected interests, including the exercise of First Amendment rights. The law has been clearly established since at least 1972, in the academic context, that the lack of a contractual or tenure right to reemployment will not, taken alone, defeat a plaintiff's claim that nonrenewal of the plaintiff's contract violates the right of free speech where the decision not to rehire was based on public criticism of the policies of the college administration. *See e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Perry v. Sindermann,* the United States Supreme Court held that the teacher's lack of a contractual or tenure right to reemployment for the academic year was immaterial to his free speech claim. *Id.,* 408 U.S. at 597–598, 92 S.Ct. at 2697–2698.

■ The Court has considered the allegations with regard to each defendant separately and has concluded that certain individual defendants are qualifiedly immune from suit on this claim. Defendant Larry Lombard was the accounting department representative on the School of Business Tenure and Promotion Committee. No evidence suggests that defendant Lombard did anything other than participate in the committee's recommendation to deny tenure. Plaintiff makes no suggestion whatsoever that any activity engaged in by defendant Lombard was in retaliation for the plaintiff's exercised First Amendment rights opposing the allegedly discriminatory treatment of Dr. Ames. The allegations against defendant Lombard are not sufficient to support a Section 1983 claim. Accordingly, defendant Lombard is entitled to summary judgment on the Section 1983 free speech claim asserted against him individually.

Defendant Frontczak was the chairman of the School of Business Tenure and Promotion committee. Plaintiff has asserted that she passed on to defendant Foster false information about plaintiff and passing on the committee's recommendation concerning plaintiff's tenure application. As with defendant Lombard, no evidence suggests that defendant Frontczak did anything other than participate in the institution's established tenure process. Plaintiff does not make any suggestion whatsoever that any activity engaged in by defendant Frontczak was in retaliation for his having exercised First Amendment rights opposing the allegedly discriminatory treatment of Dr. Ames. The allegations against defendant Frontczak are not sufficient to support a Section 1983 claim. Accordingly, defendant Frontczak is also entitled to summary judgment on the Section 1983 free speech claim asserted against her individually.

Defendant Foster, Provost and Vice President of Academic Affairs of MSCD, relied upon recommendations and information from the Dean of the School of Business and the two committees that reviewed plaintiff's tenure application. Plaintiff alleges that when he approached her to inquire about rumors he had heard that negative information was somehow being considered in the tenure process, that she willfully failed to advise him of that negative information. Plaintiff has asserted that she also relied on false information given to her by defendant Frontczak about plaintiff and passing on that information to defendant Kaplan. As with defendants Lombard and Frontczak, no evidence suggests that defendant Foster did anything at all concerning plaintiff's tenure application in retaliation for the exercise of his First Amendment rights in opposition to the Dr. Ames matter. The allegations against defendant Foster are not sufficient to support a Section 1983 claim. Accordingly, defendant Foster is also entitled to summary judgment on the Section 1983 free speech claim asserted against her individually.

No allegations exist against defendant Brown, Dean of the School of Business, that are sufficient to support plaintiff's Section 1983 claim against him individually. Plain-

tiff's claim against defendant Brown is that he was retaliated against for exercising his First Amendment rights in opposing the Dr. Ames matter. Plaintiff alleges that defendant Brown, who replaced the former dean after he was terminated, gave him an unfavorable recommendation based upon the information received by him from Frontczak and the School of Business tenure committee. Brown also based his decision not to recommend tenure on student complaints plaintiff contends he was not advised of or permitted to refute or rebut. None of the allegations, however, implicates any clearly established constitutional right that was violated by defendant Brown at the time of his tenure recommendation. Accordingly, defendant Brown is likewise entitled to summary judgment in his favor for the reason that he is entitled to qualified immunity on plaintiff's Section 1983 free speech claim.

Plaintiff asserts and attributes to defendant Parker various acts. Defendant Parker is the chairperson of the accounting department at MSCD. Plaintiff has contended that the denial of his tenure application resulted from his opposition to the way the Ames candidacy was handled within the department and because of Parker's expressed concerns for Dr. Ames alleged attitudes towards homosexuals and women. Although the underlying facts are not entirely clear, it is extremely clear that what is involved is a typical example of collegial infighting, a matter not well considered in the Section 1983 context. Plaintiff's allegations do not raise genuine disputes of fact as to whether the decision to deny plaintiff tenure was in fact made in retaliation for his exercise of the constitutional right of free speech and expressed disagreement with defendant Parker in the departmental faculty meetings. Defendant Parker is entitled to summary judgment on plaintiff's Section 1983 free speech claim for the reason that she is entitled to qualified immunity on that claim.

Plaintiff's claims against defendant Skougstad arise out of the "disastrous rift" statements included by defendant Skougstad, chairman of the accounting department's tenure committee, in a letter recommending that plaintiff be granted tenure. Plaintiff con-

tends that this letter was prepared by Skougstad with the influence of defendant Parker. However, even if true, the "disastrous rift" comment does not clearly implicate any constitutional right nor does it clearly establish a link to plaintiff's speech concerning the Ames matter and the denial of tenure. Accordingly, in the absence of such a clearly established constitutional or statutory right, defendant Skougstad is entitled to qualified immunity on plaintiff's Section 1983 free speech claim.

Plaintiff's claims with respect to defendant Kaplan are equally innocuous. He claims that improper information colored her decision regarding the decision to deny plaintiff's tenure application and in refusing the accede to the recommendations of the tenure appeal committee. None of the allegations concerning defendant Kaplan, president of MSCD, implicate any clearly established constitutional rights, nor do they establish a link between plaintiff's speech, plaintiff's expressed vocal opposition in the Ames matter and defendant Kaplan's decision to deny tenure. Accordingly, President Kaplan is entitled to qualified immunity on plaintiff's Section 1983 free speech claim against her individually.

### B. Qualified Immunity and Procedural Due Process claim under the Fourteenth Amendment

■ Plaintiff also relies on a procedural due process claims under the Fourteenth Amendment to provide a clearly established constitutional right required in the qualified immunity analysis. He argues that the process he was accorded in the tenure application review and appeal process at the institution was farcical and a sham. He argues that he was entitled to a review of his tenure application by impartial decision-makers untainted by involvement in the Ames imbroglio. Plaintiff's procedural due process claim is inextricably linked to his first amendment, free speech claim.

■ Typically, the proper analysis for a procedural due process claim requires a two pronged inquiry. First, did the individual possess a protected interest such that due protections apply? If so, then the second query is whether the individual is afforded an appropriate level of process. *Watson v. University of Utah Medical Center*, 75 F.3d 569, 577 (10th Cir.1996). Here, plaintiff has not urged that he had a protected right to tenure, but rather that he had a protected interest to have his tenure application considered fairly and in accordance with the institution's established policies and procedures and to be considered by an impartial decision maker. In the absence of a showing that the actions of which plaintiff complains were taken in retaliation for the exercise of First Amendment rights, he would normally be an employee at will, and would be entitled to be considered for tenure on the terms and conditions governing faculty members of state colleges, as set forth in the Handbook for Professional Personnel for the State Colleges in Colorado and the Handbook for Professional Personnel of MSCD. Defendants' Exhibits B and C.

■ Plaintiff's arguments break down here. He has not shown that he is anything other than an at will employee or that he has a property interest sufficient to withstand a due process challenge. It is especially true in the academic arena that a probationary faculty member does not have a property interest in being granted tenure. In the absence of such a property interest, all of the individual defendants are entitled to qualified immunity on the procedural due process claim. *See Colburn v. Trustees of Indiana University*, 973 F.2d 581 (7th Cir. 1992). In *Colburn*, the plaintiffs had argued that the denial of promotion or tenure was in response to and in retaliation for their speaking out on a matter of public concern, specifically requesting external review of the department's peer review committee. The Seventh Circuit determined that the speech at issue in the case was not a matter of public concern when it went only to internal departmental disputes.

With respect to the allegations that the plaintiff had a property interest in tenure or reappointment entitling them to due process protections, the circuit court stated:

The Fourteenth Amendment's due process guarantee applies to public employees who have a "property interest" in the terms of

conditions of their employment. ... That interest is established "by existing rules or understandings that stem from an independent source such as state law—rules and understandings that secure certain benefits ad that support claims of entitlement to those benefits." ... Thus, for example, an employee whose terms of employment include a "for cause" type provision may not be terminated without adequate procedural protection. ... A property interest is also made out by a showing of a de facto re-employment or tenure system such as where there are "mutually explicit understandings" which include a promise of continued employment....

Plaintiffs contend that they had a protectable "property interest" in their continued employment based on the University's handbooks and their own appointment contracts. Specifically, they rely on the provisions of these documents which provide that a faculty member must be notified of and agree to the "criteria and procedures employed in recommendations and decisions about reappointment and tenure." The gist of their argument is that when there is an agreement to "criteria and procedures" in conjunction with employment decisions such as tenure and reappointment, this entitles the employee to due process. We disagree.

A property interest is not established by general statements in handbooks, appointment documents or elsewhere that an employee will be judged based on some "criteria." As the First Circuit has found, "[b]y specifying in writing the usual criteria for promotion—teaching, scholarship, service—a university does not thereby set objective criteria, constricting its traditional discretion or transforming a largely judgmental decisional process into an automatic right." ...

Property interests exist when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met. ... There were no such limits on the defendants' decision-making related to plaintiffs' continued employment.

Regarding tenure, the handbooks state that the criteria for tenure are similar to those for promotion, which include teaching, research, creative work and service. These criteria are inherently subjective leaving a wide range of discretion in evaluating a faculty member's record. Moreover, the handbooks' provision that a faculty member "shall have tenure after a probationary period of not more than seven years" does not mean that tenure is automatically awarded at the end of seven years; the probationary faculty member is still subject to favorable peer review.

It is not surprising that courts have regularly refused to find that a probationary faculty member has a property interest in receiving tenure since implying an absolute right to tenure would be inconsistent with the existence of a formalized tenure process. ... Moreover, if there was a guaranteed right to tenure, then a tenure award would have no effect on a faculty member's status....

IUPUI's reappointment provisions are even more imprecise than those related to tenure decisions. Under the heading "Criteria for Reappointment" the handbooks simply state that faculty members will be advised of the criteria for reappointment, without specifying any such criteria or otherwise stating that reappointment is guaranteed under any circumstances. Once again, there is no mandatory language in the contracts or in other University documents restricting the defendants' discretion in denying reappointment. Nor did the decision to reappointment Khoury and Colburn under a series of one year contracts bind the University to continue the rehiring process....

The distinction the handbooks draw between non-reappointment and dismissal is instructive here. A faculty member who is "dismissed" has his or her employment terminated "prior to the expiration of their term of appointment." Dismissal may only occur for "(a) incompetence, (b) serious or professional misconduct, or (c) extraordinary financial exigencies of the University" The type of specific conditions necessary for dismissing a faculty member are no-

ticeably absent from the University's non-reappointment "criteria."

It was not sufficient to create a property interest for plaintiffs to be assured that they would be judged by "criteria" established by the University. They contend that given this promise, they could not be denied employment for reasons outside the criteria. Regarding reappointment, there were no identified criteria. The criteria for tenure do not exclude any other basis for evaluating an employee, and as discussed previously, the criteria themselves allow for wide discretion. Plaintiffs correctly assert that they could not be refused employment for a reason entitled to constitutional protection. But that is irrelevant to the issue of whether they have an established property interest. There is no guarantee in the handbooks or appointment documents that either plaintiff could not be denied reappointment or tenure except under specific circumstances.

973 F.2d at 590 (citations omitted).

The reasoning of the Seventh Circuit is equally applicable in the instant case. As in the *Colburn* case, the plaintiff here has failed to establish that he had a protected property interest entitling him to due process protections. Further, he has failed to demonstrate to the satisfaction of this Court any procedures that were not followed by the College, the faculty members participating in the tenure process or any other person involved in that internal collegial process. His disagreement is with the result of the process, casting a suspicion afloat that his tenure denial was in reality a result of a process infected with improper criteria, including his claimed opposition to discriminatory hiring practices that occurred in connection with the Ames matter. As the circuit court stated in *Colburn*, assurances that there would be no problems when it came time for plaintiff's tenure application to be considered are not sufficient to create a property interest. Plaintiff has provided no basis for the Court to find that plaintiff has any protected property interest outside of the college's written procedures and policies concerning tenure. Under those express, established written procedures and policies, plaintiff has no right to tenure and

all matters involved in the decision whether to grant tenure are discretionary and peculiarly dedicated to the peer review process. This Court is not, and should not act as, a super-tenure review committee and will not inject itself into matters that relate to the effective functioning of MSCD.

The Court believes that the plaintiff has not met his burden of establishing a property interest in continued employment with MSCD in this instance. Because he has failed to make a showing that he has a protected property interest, he has failed to meet his burden to show that the defendants violated a clearly established right. Accordingly, the defendants are entitled to qualified immunity as to plaintiff's procedural due process claim.

■ Plaintiff has also argued, in a rather indirect and backhanded manner, that he may have had a liberty interest implicated by the defendants' decisions and recommendations concerning tenure at MSCD. He has argued that he was accused falsely of causing a "disastrous rift" in the accounting department, and that such accusations have affected his employment prospects with MSCD and other institutions. The Tenth Circuit has stated the following with respect to such claims:

Once plaintiff has identified a clearly established right, we examine whether she has come forward with the necessary factual allegations, . . . to establish that defendants violated that right. Plaintiff asserts that defendants infringed her liberty interest in her professional reputation and ability to obtain future employment by charges they made after they placed her on administrative leave. In order to show that defendants infringed on her liberty interest, plaintiff must show several elements.

First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. . . . Second, the statements must be false. . . . Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published. . . . These elements are not

disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest. *Watson v. University of Utah Medical Center,* 75 F.3d 569, 578 (10th Cir.1996) (citations omitted).

In this case, plaintiff alleged and produced evidence that he was credited for causing the disastrous rift in the accounting department. However, the statements alleged by plaintiff to have infringed his "liberty" interest are not, in this Court's opinion of such a nature that they can be considered to impugn the good name, reputation, honor, or integrity of the employee. Even assuming the statement that plaintiff has caused a "disastrous rift" to be true, it is not the type of statement that stigmatizes his good name, nor is it the sort of statement described by the United States Supreme Court in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

In *Paul v. Davis,* the Supreme Court held that the plaintiff's claimed interest in reputation was neither "liberty" nor "property" guaranteed against state deprivation without due process of law. The Supreme Court stated that it has "never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment." The Supreme Court continued, citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972):

> While *Roth* recognized that governmental action defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation, its language is quite inconsistent with any notion that a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment:
>
> "The State, *in declining to rehire the respondent,* did not make any charge against him that might seriously damage his standing and associations in his community. . . .
>
> "Similarly, there is no suggestion that the State, *in declining to re-employ the respondent,* imposed on him a stigma or

other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.,* at 573, 92 S.Ct. at 2707, 33 L.Ed.2d, at 558 (emphasis supplied).

The statements of which plaintiff complains in this case were made by committee members or other college employees as part of their duties to consider plaintiff's application for tenure. There is no evidence whatsoever that the statements were published outside of the college or to persons not involved in the tenure peer review process. The Court believes that plaintiff has failed to set out a valid claim of liberty deprivation so as to entitle him to due process protections under the Fourteenth Amendment. Accordingly, the Court will grant summary judgment to all of the individual defendants on the liberty interest due process claim, concomitantly finding that all of the individual defendants are entitled to qualified immunity on that claim.

*VII. Title VII as against the individual defendants in their individual capacities*

■ The Court will grant the motion seeking summary judgment on the Title VII claim against the individual defendants in their individual capacities. While it is arguable that a public employee may be personally liable in a Title VII claim, existing Tenth Circuit precedent suggests that is not the law in this circuit. Under *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993), the appellate court held that Title VII suits against individuals must proceed in their official capacity and that individual capacity suits are not appropriate. *Id.* at 1125. The Tenth Circuit, in *Ball v. Renner,* 54 F.3d 664, 666–668 (10th Cir.1995), acknowledged that there is a split of authority on this issue, specifically with respect to supervisor liability in a Title VII case. However, the circuit court refused to address these legal issues regarding personal liability on the part of the agent in Title VII cases. It did consider in that opinion cases where Title VII liability has been imposed on agents as if they were employers, where the facts supported a find-

ing that those agents were the equivalents of true employers.

In any event, this line of authority is not persuasive to the Court nor does it need to be considered in this case. The employer defendants, i.e., MSCD and the Trustees, its governing body, are presently parties in this suit as defendants and are able to respond in damages if so required. The Court need not look to other defendants to satisfy potential Title VII liability. There are no defendants, with the possible exception of President Kaplan, that exercise the employer-like functions discussed in *Ball v. Renner,* so the argument is of little consequence in this factual scenario. *Ball v. Renner* is readily distinguishable from this case, because it was a Title VII sexual harassment case in which the plaintiff sought to have the alleged harasser treated as an employer subject to liability. In this case, plaintiff is not asserting that he personally was discriminated against. Rather, he is asserting a retaliation claim, which he claims arose when he opposed discriminatory treatment of a third person by the defendants. The factual basis supporting the Court's reasoning in *Ball v. Renner* and which might support individual liability in another Title VII case is absent in this case. Finally, it is clear that previous Tenth Circuit holdings dictate the conclusion that suits against individuals must proceed in their official capacities only and that individual capacity suits are not appropriate. Accordingly, the motion for summary judgment, as to the Title VII claim against the individual defendants, will be granted.

## VIII. State law claims against the individual defendants

### (A) Implied contract and intentional interference

■ The individual defendants are not personally liable for a breach of contract, as they are not parties to the contract. To the extent that the plaintiff seeks damages from defendants who are not the employer and who are not parties to the contract, the motion for summary judgment will be granted.

■ Furthermore, this Court has previously determined that plaintiff does not have any contract or protected property rights and that he is an employee at will. Colorado law is clear that in order to establish the tort of intentional interference with contract, a plaintiff must show:

(1) the existence of a contract between the plaintiff and a third-party; (2) knowledge by the defendant of the contract or knowledge of facts which would lead the defendant to inquire as to the existence of the contract; (3) intent by the defendant to induce a breach of contract with the third-party; (4) action by the defendant which induces the breach of contract; and (5) damages to the plaintiff.

*Galleria Towers, Inc. v. Crump Warren & Sommer, Inc.,* 831 P.2d 908, 912 (Colo.App. 1991), cert. denied (1992).

As determined in prior portions of this Order, plaintiff was an at-will employee and did not have any contract rights in continued employment at MSCD or in tenure. Consequently, he is unable to satisfy the first prong of the intentional interference with contract claim against any of the individual defendants and this claim fails. Accordingly, summary judgment on the intentional interference with contract claim will be granted in favor of the individual defendants.

### (B) Outrageous conduct claim (intentional infliction of emotional distress)

■ The parties agree that outrageous conduct is established only when the conduct complained of is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *See e.g.,* Restatement (Second) of Torts § 46, Comment d; (Colorado Jury Instructions–Civil 3d, 9:3, Notes on Use and Chapter 23). After hearing the arguments and reviewing carefully the facts asserted by plaintiff in support of this claim, the Court has determined that it will grant summary judgment in favor of all defendants on this claim. The facts in this case do not provide a factual basis for an instruction at trial on an outrageous conduct claim, especially in the context of this particular employment dispute. *Grandchamp v. United Air Lines,* 854 F.2d 381 (10th Cir.

1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989) (termination of employment without more is not enough for an outrageous conduct claim); *Orjias v. Stevenson,* 31 F.3d 995, 1012, n. 3 (10th Cir. 1994).

*(C). Defamation claim against defendants Skougstad, Frontczak and Parker*

▪ The Court finds that the plaintiff became embroiled in a public controversy concerning the decision-making process of a public state institution. He involved himself in the controversy concerning Dr. Ames and that particular selection process, and by doing so he became a public figure. The matter was well known throughout the accounting department and by others; it was a matter which apparently had a divisive effect within the department. The written materials claimed by plaintiff to be defamatory were protected communications which were privileged and were prepared in connection with the defendants' duties to inform the trustees regarding the tenure decision.

With respect to all of the defendants, including Parker, Frontczak and Skougstad, there are simply no factual allegations that provide any support whatsoever for plaintiff's defamation claims against them. Accordingly, the motion for summary judgment will be granted in favor of defendants Parker, Frontczak and Skougstad.

#### Conclusion and Order

Summarizing, and in accordance with the Court's oral findings from the bench as enumerated more fully on the record of the hearing, the sole claim that remains for trial is the Title VII retaliation claim against MSCD and the Trustees in their official capacities. It is therefore

**ORDERED that:**

1. Plaintiff's claim for relief against all defendants under Section 1981 shall be, and is, **DISMISSED** for failure to state a claim.

2. Plaintiff's claim for relief against all defendants under Section 1985 shall be, and is, **DISMISSED** for failure to state a claim.

3. Plaintiff's state law based claims for relief, including implied contract/intentional interference with contract, and outrageous conduct/intentional infliction of emotional distress, against Defendants Metropolitan State College of Denver and defendants James Fleming, Ann Steinbeck, Aims C. McGuinness, John Roybal, Harriet Barker, and George Brantley, in their official capacities as Trustees of State Colleges in Colorado shall be, and are, **DISMISSED WITHOUT PREJUDICE.**

4. Summary Judgment shall be, and is, **GRANTED** in favor of Defendants Metropolitan State College of Denver and defendants James Fleming, Ann Steinbeck, Aims C. McGuinness, John Roybal, Harriet Barker, and George Brantley, in their official capacities as Trustees of State Colleges in Colorado, on plaintiff's claim for relief under 42 U.S.C. § 1983, for the reason that they are not persons within the meaning of § 1983.

5. Summary judgment shall be, and is, **GRANTED** in favor of defendants Sheila Kaplan, Joan M. Foster, R. Michael Brown, Virginia Parker, David Skougstad, Larry Lombard, Nancy T. Frontczak, on plaintiff's claim for relief under Title VII.

6. Summary judgment shall be, and is, **GRANTED** in favor of defendants, in their individual and official capacities, Sheila Kaplan, Joan M. Foster, R. Michael Brown, Virginia Parker, David Skougstad, Larry Lombard, Nancy T. Frontczak, on plaintiff's claim for relief under 42 U.S.C. § 1983.

7. Summary judgment shall be, and is, **GRANTED** in favor of the individual defendants on plaintiff's procedural due process Fourteenth Amendment claims, for the reason that defendants are entitled to qualified immunity on those due process claim.

8. Summary judgment shall be, and is, **GRANTED** in favor of defendants Parker, Frontczak, and Skougstad on plaintiff's state law defamation claim.

9. Summary judgment shall be, and is, **GRANTED** in favor of all individual defendants with respect to plaintiff's state law based claims for relief, including implied contract/intentional interference with contract

and outrageous conduct/intentional infliction of emotional distress.

## PARTIAL JUDGMENT

This action came before the Court upon defendants' motions to dismiss and for summary judgment. In the "Order and Decision of Defendants' Motions to Dismiss and for Summary Judgment," the Court found that defendants are entitled to judgment on certain claims for the there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law with respect to certain claims. It is therefore

**ORDERED AND ADJUDGED** that the plaintiff, Phillip W. Thornton, recover nothing of any of the defendants on his Section 1981 claim. It is further

**ORDERED AND ADJUDGED** that the plaintiff, Phillip W. Thornton, recover nothing of any of the defendants on his Section 1985 claim. It is further

**ORDERED AND ADJUDGED** that the plaintiff, Phillip W. Thornton, recover nothing of the defendants Metropolitan State College of Denver and defendants James Fleming, Ann Steinbeck, Aims C. McGuinness, John Roybal, Harriet Barker, and George Brantley, in their official capacities as Trustees of State Colleges of Colorado, on his claim for relief under 42 U.S.C. § 1983. It is further

**ORDERED AND ADJUDGED** that the plaintiff, Phillip W. Thornton, recover nothing of the defendants Sheila Kaplan, Joan M. Foster, R. Michael Brown, Virginia Parker, David Skougstad, Larry Lombard, and Nancy T. Frontczak, on plaintiff's claim for relief under Title VII. It is further

**ORDERED AND ADJUDGED** that the plaintiff, Phillip W. Thornton, recover nothing of defendants, in their individual and official capacities, Sheila Kaplan, Joan M. Foster, R. Michael Brown, Virginia Parker, David Skougstad, Larry Lombard, and Nancy T. Frontczak, on plaintiff's claim for relief under 42 U.S.C. § 1983. It is further

**ORDERED AND ADJUDGED** that the plaintiff, Phillip W. Thornton, recover nothing of the individual defendants, Sheila

Kaplan, Joan M. Foster, R. Michael Brown, Virginia Parker, David Skougstad, Larry Lombard, and Nancy T. Frontczak, on plaintiff's procedural due process Fourteenth Amendment claims. It is further

**ORDERED AND ADJUDGED** that the plaintiff, Phillip W. Thornton, recover nothing of defendants Parker, Frontczak, and Skougstad on plaintiff's state law defamation claim. It is further

**ORDERED AND ADJUDGED** that the plaintiff, Phillip W. Thornton, recover nothing of all individual defendants, Sheila Kaplan, Joan M. Foster, R. Michael Brown, Virginia Parker, David Skougstad, Larry Lombard, and Nancy T. Frontczak, on his state law based claims for relief, including implied contract/intentional interference with contract and outrageous conduct/intentional infliction of emotional distress.

## ORDER DISMISSING CERTAIN CLAIMS

This action came before the Court upon defendants' motions to dismiss and for summary judgment. In the "Order and Decision of Defendants' Motions to Dismiss and for Summary Judgment," the Court found, in part, that plaintiff's state law based claims for relief, including implied contract/intentional interference with contract, and outrageous conduct/intentional infliction of emotional distress, against Defendants Metropolitan State College of Denver and defendants James Fleming, Ann Steinbeck, Aims C. McGuinness, John Roybal, Harriet Barker, and George Brantley, in their official capacities as Trustees of State Colleges in Colorado should be dismissed without prejudice. Accordingly, it is therefore

**ORDERED** that plaintiff's state law based claims for relief, including implied contract/intentional interference with contract, and outrageous conduct/intentional infliction of emotional distress, against Defendants Metropolitan State College of Denver and defendants James Fleming, Ann Steinbeck, Aims C. McGuinness, John Roybal, Harriet Barker, and George Brantley, in their official capacities as Trustees of State Colleges in

Colorado are **DISMISSED WITHOUT PREJUDICE.**